COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-214-CR

 

DAMIAN VASQUEZ                                                              APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 362ND
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

 








Appellant Damian Vasquez appeals his conviction
for aggravated assault.  In seven issues,
appellant complains that (1) the evidence is factually insufficient to support
a finding that appellant did not act in self-defense, (2) the trial court erred
by allowing a doctor and a police officer to opine that the complainant=s wounds
were acquired while fleeing, (3) the trial court erred by overruling appellant=s
objection to the prosecutor=s
improper closing argument, (4) the trial court erred by overruling appellant=s motion
to suppress the evidence seized from his car in violation of the Fourth
Amendment and the Texas Constitution, and (5) the cumulative effect of the
errors in the trial warrants a reversal of appellant=s
conviction.  We affirm.

Appellant admits to having assaulted complainant
with a knife.  He claims, however, that
he stabbed complainant in self-defense. 
The fight between appellant and complainant began earlier in the evening
when complainant and his friends, Jennifer Ashworth and Dustin Mock, were
driving home from a party on Interstate 35, and they encountered appellant and
his friend, Santana Rodriguez.  An
altercation followed, although there was conflicting testimony as to how it
began: Ashworth claims that something hit her car, while Rodriguez claims that
Ashworth cut him off and then something hit appellant=s
car.  Appellant followed Ashworth to her
apartment complex where the parties got out of their cars and began to
physically fight.  While appellant and
complainant were wrestling, appellant drew a knife and stabbed complainant
several times. 








After the stabbing, appellant and Rodriguez fled
the scene in appellant=s car, while Ashworth and Mock
attended to complainant.  Police officers
promptly arrived at the scene and detained appellant and Rodriguez as they were
leaving the apartment complex.  Appellant
admitted that he had been involved in a fight but denied that weapons were
involved.  The officers recovered a
nightstick and a bloody knife from appellant=s
vehicle.  Later that night, Mock and
Ashworth identified appellant and Rodriguez as the persons involved in the
assault.   

In his first issue, appellant contends that the
evidence is factually insufficient to support the jury=s
implicit rejection of his self-defense theory because the record reflects that
the complainant and Mock were the aggressors. 
Additionally, appellant asserts that the evidence is factually
insufficient because complainant and his friends had been drinking alcohol
prior to the altercation, and the jury should have given no weight to their
eyewitness testimony due to their diminished capacities. 

Both appellant and Rodriguez testified that
complainant and his friends were the aggressors, that complainant had appellant
in a headlock at the time of the stabbing, and that appellant tried to retreat
but could not.  Appellant stated that,
while he was being choked, he was in fear for his life and therefore retrieved
a knife from his pocket and stabbed complainant in the back of the leg.  He said he unintentionally wounded
complainant=s shoulder as he was trying to
get away.








Self-defense will justify the use of force Awhen and
to the degree [a person] reasonably believes the force is immediately necessary
to protect himself against the other=s use or
attempted use of unlawful force.@[2]  When a defendant raises self-defense, he
bears the burden of production, meaning that he must produce some evidence that
supports his defensive theory.[3]  Once such evidence is produced, the State has
the burden of persuasion to prove its case beyond a reasonable doubt.[4]









In reviewing the factual sufficiency of the
evidence to support a conviction, we are to view all the evidence in a neutral
light, favoring neither party.[5]  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact finder was rationally justified in finding guilt beyond a reasonable
doubt.[6]  Evidence can be factually insufficient in one
of two ways: (1) the evidence is so weak as to be clearly wrong or manifestly
unjust, or (2) the finding of a vital fact is so contrary to the great weight
and preponderance of the evidence as to be clearly wrong.[7]  

When an appellant challenges the factual
sufficiency of the rejection of a defense, however, we employ a modified
standard of review and we evaluate all the evidence in a neutral light and ask
whether the State=s evidence, taken alone, is too
weak to support the finding and whether the proof of guilt, although adequate
if taken alone, is against the great weight and preponderance of the evidence.[8]  In conducting this review, we must give great
deference to the jury=s assessment of witness
credibility and determination of what weight should be assigned to conflicting
testimony.[9]


The following evidence supports the jury=s guilty
verdict:








Officer Chris Nixon, a corrections officer in
Dallas County, who lived in the apartment complex where the fight took place
and witnessed the incident from his upstairs balcony, stated that he saw
appellant stab complainant, that appellant was standing over complainant, that
complainant was slumped down, and that he appeared to be trying to get
away.  He also stated that appellant was
not in a headlock when he saw appellant stab complainant.   

Additionally, Dr. Randall Friese, an emergency
trauma surgeon, testified that complainant was stabbed six times, at least one
of which was in the back. Dr. Friese also gave his opinion that the wounds were
consistent with someone fleeing an aggressor. 
Officer Jeff Persinger, who responded to the call, further testified
that complainant=s stab wounds to the back
indicated that he was trying to get away. 

Further, complainant testified that appellant and
his friend approached him when he got out of the car.  He testified that appellant stabbed him as he
was trying to get away from appellant and that he never had appellant in a
headlock.  Both Mock and Ashworth stated
that they did not really see the fight between appellant and complainant
because their attention was on the fight between Mock and Rodriguez.  








When viewed in a neutral light,[10]
there is factually sufficient evidence from which a rational fact-finder could
have found beyond a reasonable doubt that the appellant was not acting in
self-defense.  We decline to substitute
our judgment for that of the jury on how much weight to give complainant and
his friends= testimony.[11]
Accordingly, we overrule appellant=s first
issue. 

In his second and third issues, appellant claims
the trial court erred by allowing the opinion testimony of Dr. Friese and
Officer Persinger that complainant=s wounds
were consistent with someone fleeing an aggressor because their testimony violates
rule 602's requirement that a witness must have personal knowledge of the
matter to which he testifies and because the witnesses were not present during
the assault.[12]  We review the trial court=s
admission of evidence under an abuse of discretion standard.[13]  In determining whether the trial court abused
its discretion, we must uphold the trial court=s ruling
if it is reasonably supported by the record and is correct under any theory of
law applicable to the case.[14]  The trial court will not be overturned as long
as its ruling was within the zone of reasonable disagreement.[15]









Rule 602 states that the personal knowledge
requirement is subject to the provisions of rule 703.[16]  Rule 703 explicitly allows opinion testimony
by expert witnesses to be based on Afacts or
data . . . perceived by, reviewed by, or made known to the expert at or before
the hearing.@[17]  Appellant stipulated that Dr. Friese was
qualified as an expert witness. 

 Thus, Dr. Friese could properly
testify as to the cause of complainant=s
injuries based on his knowledge, experience, and status as an expert witness. 








Likewise, Officer Persinger was also qualified as
an expert witness.  He testified that he
had been in the Military Police Corps Reserve 1985 and on active duty since
from 1988 to 2000.  During this time, he
testified that he received training in weapons, lifesaving, and first aid.  Before joining the Lewisville Police
Department in 2000, he attended TECLOSE Academy.  Officer Persinger testified that he had
previous experience with crime scenes and with stab victims.  Given this testimony, the trial judge was
within his discretion in permitting Officer Persinger=s expert
testimony based on his knowledge and experience.[18]  Therefore, the trial court did not abuse its
discretion by allowing Officer Persinger to testify as to the cause of
complainant=s injuries.  We overrule appellant=s second
and third issues. 

In his fourth issue, appellant argues that the
trial court erred by overruling appellant=s
objection to the prosecutor=s
improper closing argument.  The
prosecutor stated, 

Let=s look at the additional
requirements . . . And if a reasonable person in the defense of the situation
would not have retreated.  That=s the second part of
deadly force, would not have retreated. Would a reasonable person have
retreated instead of stabbing an unarmed man six times? Did he have an
opportunity to retreat? Sure.  He could
have stopped anywhere along the way before he went down there.  He could have stayed in his car.  Anytime that he=s fighting, he could have
stopped the fight, even if you believe his testimony.  He had numerous occasions that he could have
retreated instead of resorting to deadly force. 


 








Appellant objected that this argument was a misstatement of the law
because it implies that appellant could not rely on self-defense if he could
have retreated at any time during the fight and because it miscast the timing
of the duty to retreat, indicating that the duty exists along a continuum as
opposed to an immediate situation.[19]


Proper jury argument is confined to one of the
following areas: (1) summation of the evidence; (2) reasonable deduction from
the evidence; (3) answer to argument of opposing counsel; or (4) plea for law
enforcement.[20]  It is not error for the State to quote or
paraphrase the jury charge.[21]  An argument that contains a statement of law
contrary to the jury charge, however, is error.[22]








Appellant asserts, and the State agrees, that the
duty to retreat arises when it becomes necessary for one to use deadly force
and requires retreat from the immediate situation, if possible.[23]  Appellant, however, contends that the
prosecutor=s argument improperly implies
that he had a duty to retreat before the fight began and therefore it is a
misstatement of the law.  The prosecutor,
however, was asserting that even if the jury believed appellant=s
testimony that complainant had him in a headlock, a reasonable person in his
position would have retreated or stopped fighting instead of stabbing
complainant.  This argument properly
follows the law, which allows a person to use deadly force against another in
certain situations Aif a reasonable person in that
situation would not have retreated.@[24]  Thus, the prosecutor=s
argument, when taken in context and as a whole, was a proper statement of the
law. Therefore, the trial court did not err by overruling appellant=s
objection to the prosecutor=s
argument and we overrule appellant=s fourth
issue. 








In his fifth and sixth issues, appellant asserts
that the trial court erred by failing to suppress the evidence seized by
Officer Maly because the initial detention violated the Fourth Amendment and
the Texas Constitution[25]
in that it was based solely on an anonymous tip from a disturbance call.[26]









We review a trial court's ruling on a motion to
suppress evidence under a bifurcated standard of review.[27]  In reviewing the trial court's decision, we
do not engage in our own factual review.[28]  At a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.[29]  Therefore, we give almost total deference to
the trial court's ruling on (1) questions of historical fact and (2)
application‑of‑law‑to‑fact questions that turn on an
evaluation of credibility and demeanor.[30]  We review de novo a trial court's ruling on
mixed questions of law and fact if it does not turn on the credibility and
demeanor of witnesses.[31]  When the trial court does not file findings
of fact, the reviewing court assumes that the trial court made implicit
findings that support its ruling, so long as those implied findings are
supported by the record.[32]

Generally, law enforcement officers may stop and
briefly detain persons suspected of criminal activity on less information than
is constitutionally required for probable cause to arrest.[33]  To justify temporary detention, the officer
must have specific articulable facts which, considering his experience and
personal knowledge and his inferences from those facts, would reasonably
warrant an intrusion on the freedom of the citizen stopped for investigation.[34]


The articulable facts upon which Officer Maly
relied when he detained appellant were as follows:








On the night of the offense, Officer Maly was
responding to a disturbance call at the same apartment complex.  As he entered the apartment complex, he
received a radio dispatch from Officer Persinger, who was already at the scene
and talking to witnesses.  Officer
Persinger related that two men involved in an altercation were fleeing the
scene in a small Mitsubishi-type car.  As
Officer Maly entered the complex through the gate, he saw a small
Mitsubishi-type car occupied by two men leaving the complex.  Because the car and its occupants matched
Officer Persinger=s description, Officer Maly
followed and stopped the car.  When he
approached appellant=s car, Officer Maly noticed a Anightstick-like
club@ in
plain view and further detained the two men. 

Officer Maly=s
suspicion was not based solely on an anonymous tip from a disturbance call, as
appellant contends. Officer Maly received information describing appellant=s
vehicle and its occupants from Officer Persinger who spoke with witnesses at
the scene. This information was relayed to Officer Maly through a radio
dispatch.  It is settled law that
probable cause to detain for investigatory purposes may come from a police
broadcast based on reliable information furnished by an otherwise credible,
known private citizen whose only contact with the police or criminal activity
results from having witnessed a criminal act.[35]  We overrule appellant=s fifth
and sixth issues.








In his seventh issue, appellant argues that the
cumulative effect of the errors in the above issues warrants a reversal of his
conviction.  The doctrine of cumulative
error, however, rarely results in reversal, and is predicated upon meeting the
standard of reversible error.[36]  Additionally, because appellant has not shown
any error in this case, the doctrine is inapplicable.[37]  Therefore, we overrule appellant=s
seventh issue.  

Having
overruled all of appellant=s issues, we affirm the trial court=s judgment.

 

 

PER
CURIAM

 

PANEL A:   CAYCE, C.J.; HOLMAN and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 








DELIVERED:  January 19, 2006











[1]See Tex. R. App. P. 47.4.





[2]Tex.
Penal Code Ann.
' 9.31(a) (Vernon 2003).





[3]Saxton v. State, 804 S.W.2d 910, 912-14
(Tex. Crim. App. 1991).





[4]Id. 





[5]See Zuniga v. State, 144 S.W.3d 477, 481
(Tex. Crim. App. 2004).





[6]Id. at 484. 





[7]Id. at 484-85; Zuliani
v. State, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003); Johnson  v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).





[8]Zuliani, 97 S.W.3d at 595; Johnson,
23 S.W.3d at 16; Roy v. State, 161 S.W.3d 30, 36-37 (Tex. App.CHouston [14th Dist.]
2004, no pet.). 





[9]Hanks v. State, 137 S.W.3d 668, 671
(Tex. Crim. App. 2004). 





[10]See Zuniga, 144
S.W.3d at 481(setting out the factual sufficiency standard).





[11]See Hanks, 137 S.W.3d at  671; Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997).





[12]Tex.
R. Evid.
602. 





[13]Burden v. State, 55 S.W.3d 608, 615
(Tex. Crim. App. 2001).  





[14]Carrasco v. State, 154 S.W.3d 127, 129
(Tex. Crim. App. 2005).





[15]Id.





[16]Id. 





[17]Tex.
R. Evid.
703. 





[18]See Tex.
R. Evid.
702; Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990), cert.
denied, 501 U.S. 1213 (1991); Kerr v. State, 921 S.W.2d 498, 502
(Tex. App.CFort Worth 1996, no pet.)
(all concluding that no abuse of discretion occurred where the trial court
allowed a police officer to testify as an expert after hearing his training and
qualifications).  Additionally, appellant
did not object to Officer Persinger=s qualifications as an expert; thus, he is
precluded from challenging his qualifications on appeal.  Tex.
R. App. P. 33.1(a).  





[19]See Fielder v. State, 683 S.W.2d 565, 592
(Tex. App.CFort Worth 1985), rev=d on other grounds, 756 S.W.2d 309 (Tex.
Crim. App. 1988) (stating that the duty to retreat arises when it becomes
necessary for one to use deadly force and requires retreat Afrom the immediate
situation, if possible.@).  Appellant does not argue that the jury charge
was improper. 





[20]Felder v. State, 848 S.W.2d 85, 94-95
(Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).  





[21]Whiting v. State, 797 S.W.2d 45, 48 (Tex.
Crim. App. 1990). 





[22]Id.   





[23]Fielder, 683 S.W.2d at 592; Young  v. State, 530 S.W.2d 120, 123 (Tex. Crim.
App. 1975).  ASituation@ means the combination of
circumstances at a given moment.  Sternlight
v. State, 540 S.W.2d 704, 706 (Tex. Crim. App. 1976).





[24]Tex.
Penal Code Ann.
' 9.32(a)(2).





[25]The Texas Court of
Criminal Appeals has, in fact, applied the Terry standards without a
separate analysis under Texas law. See Brother v. State, 166 S.W.3d 255,
257 (Tex. Crim. App. 2005); Davis v. State, 829 S.W.2d 218, 219 (Tex.
Crim. App. 1992). Therefore, we apply the same analysis to appellant=s federal and state
claims. 





[26]See Hall v. State, 74 S.W.3d 521, 527
(Tex. App.CAmarillo 2002, no pet.). 





[27]Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).





[28]Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort Worth 2003, no
pet.). 





[29]State v. Ross, 32 S.W.3d 853, 855
(Tex. Crim. App. 2000).  





[30]Johnson v. State, 68 S.W.3d 644, 652‑53
(Tex. Crim. App. 2002); Best, 118 S.W.3d at 861‑62. 





[31]Johnson, 68 S.W.3d at 652‑53;
Harrison v. State, 144 S.W.3d 82, 85-86 (Tex. App.CFort Worth 2004, pet.
granted).





[32]Ross, 32 S.W.3d at 855. 





[33]See Terry v. Ohio, 392 U.S. 1, 22, 88 S.
Ct. 1868, 1880 (1968);  Crockett v.
State, 803 S.W.2d 308, 311 (Tex. Crim. App. 1991).  





[34]Terry, 392 U.S. at 21, 88 S.
Ct. at 1879. 





[35]Rodriguez v. State, 975 S.W.2d 667, 676
(Tex. App.CTexarkana 1998, pet. ref=d); see also Brother,
166 S.W.3d at 257 (stating that the factual basis for stopping a vehicle may be
acquired from another person). 





[36]See Chamberlain v. State, 998 S.W.2d 230, 238
(Tex. Crim. App. 1999) (recognizing that a number of errors may be found
harmful in their cumulative effect), cert. denied, 528 U.S. 1082 (2000);
see also Tex. R. App. P.
44.2 (setting out the standards for reversible error); W. Wendell Hall, Standards
of Review in Texas, 34 St. Mary=s L. J. 1, 24 (2002)
(discussing how the doctrine of cumulative error is seldom used).  





[37]See Chamberlain, 998 S.W.2d at 238
(stating that there must be a number of errors for the doctrine of cumulative
error to apply); Barbee v. State, No. 02-03-00480-CR, 2005 WL 1120011,
at *3 (Tex. App.CFort Worth May 12, 2005,
no pet.) (not designated for publication) (citing Chamberlain for the
same principle).