MEMORANDUM OPINION

No. 04-06-00009-CR

Richard RUTHENBERG,

Appellant

v.

The STATE of Texas,

Appellee

From the County Court at Law No. 4, Bexar County, Texas

Trial Court No. 911061

Honorable Sarah E. Garrahan-Moulder, Judge Presiding




Opinion by: Karen Angelini, Justice



Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Karen Angelini, Justice



Delivered and Filed: January 19, 2007



AFFIRMED



 Richard Ruthenberg appeals his conviction for the offense of driving while intoxicated (DWI), raising the following issues:
the evidence was legally and factually insufficient to sustain a guilty verdict; and he was denied effective assistance of
counsel in violation of both the United States Constitution and the Texas Constitution. See U.S. Const. amend. VI; Tex.
Const. art. I, § 10. 



Nature of the Case


 On the evening of January 3, 2005, Charles Marcus, a San Antonio Police officer, was patrolling the area around San
Antonio College when he observed a 2002 Mercury Cougar drive past him. Officer Marcus testified that he ran the license
plates out of habit and although the plates came back "clean," he continued to observe the vehicle, whereupon he witnessed
the driver of the vehicle make a left turn without signaling. Officer Marcus then decided to "parallel" (1) the vehicle and
subsequently observed the driver of the vehicle moving from lane to lane without signaling, straddling both lanes, and
turning without signaling. Officer Marcus turned on his emergency lights to effect a traffic stop; however, the driver of the
vehicle failed to immediately pull over and Officer Marcus had to hit his air horn to get the driver's attention. 

 Officer Marcus exited his vehicle, approached the stopped vehicle, and asked the driver, who was subsequently identified
as Richard Ruthenberg, for both his driver's license and proof of insurance. When Ruthenberg did not immediately produce
the requested items, Officer Marcus made a second request. Ruthenberg responded to this second request by producing
only his driver's license. Officer Marcus requested Ruthenberg's proof of insurance a third time, whereupon Ruthenberg
retrieved his insurance information from the glove compartment. In speaking with Ruthenberg, Officer Marcus noticed that
his eyes were glassy, his breath smelled strongly of alcohol, and his speech was slurred.

 Officer Marcus then requested that Ruthenberg exit his vehicle so he could determine whether Ruthenberg had, in fact,
been driving while intoxicated. Although Ruthenberg denied having had anything at all to drink, he displayed the presence
of all six clues of intoxication when administered the horizontal gaze nystagmus ("HGN") field sobriety test. Additionally,
when Ruthenberg was asked to recite the "ABC's," he confused and slurred them. Further, Ruthenberg was unable to
successfully complete the "walk and turn test," and missed heel to toe on the first step, staggered on the second, and would
have fallen on the third if Officer Marcus had not caught him. Ruthenberg also exhibited a two inch back and forth sway as
he stood by his vehicle.

 Officer Marcus testified that based upon his sixteen years of experience as a police officer, including his experiences while
on the DWI task force and as a certified instructor in standardized field sobriety tests, it was his opinion that Ruthenberg
had lost the normal use of his mental and physical faculties due to the introduction of alcohol into the body. At
approximately 11:18 p.m., Ruthenberg was arrested for driving while intoxicated and transported to the DWI room. 
Ruthenberg "insisted" upon providing samples of his breath for testing in an intoxilyzer instrument, with the first sample
being taken at 11:39 p.m., and the second at 11:42 p.m. The intoxilyzer results reflected an alcohol concentration in
Ruthenberg's body of .207 and .190, well beyond the legal limit of .080.

 Upon hearing the evidence, a jury convicted Ruthenberg of the offense of driving while intoxicated, and the trial judge
sentenced him to confinement for six months in jail and a fine of $700; however Ruthenberg's sentence was suspended and
he was placed on community supervision for one year. Ruthenberg appeals, arguing in his first two issues that the evidence
is legally and factually insufficient to support a guilty verdict. 

Legal and Factual Sufficiency of the Evidence


 When conducting a legal sufficiency-of-the-evidence review as prescribed by Jackson v. Virginia, 443 U.S. 307, 319
(1979), we do not weigh the evidence tending to establish guilt against the evidence tending to establish innocence, nor do
we assess the credibility of witnesses on each side.Ex parte Elizondo, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). We
view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Mosley v. State, 983 S.W.2d
249, 254 (Tex. Crim. App. 1998). If we determine that the evidence is legally insufficient, we must render a judgment of
acquittal. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996).

 In conducting a factual sufficiency review, we view "all the evidence without the prism of 'in the light most favorable to the
prosecution' and set[] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust." Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997) (quoting Clewis, 922 S.W.2d at 129); see
also Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). In doing so, we must "be mindful that a jury has already
passed on the facts, and convicted, and that the court should never order a new trial simply because it disagrees with the
verdict, but only where it seems to the court to represent a manifest injustice, though supported by legally sufficient
evidence." Watson, 204 S.W.3d at 414. The factual-sufficiency analysis can be broken down into two prongs. Id. "The first
prong asks whether the evidence introduced to support the verdict, though legally sufficient, is nevertheless 'so weak' that
the jury's verdict seems 'clearly wrong and manifestly unjust.'" Id. "The second prong asks whether, considering conflicting
evidence, the jury's verdict, though legally sufficient, is nevertheless against the great weight and preponderance of the
evidence." Id. 

I. Ruthenberg's Claims That the Evidence is Legally and Factually Insufficient 

 Ruthenberg first argues that the evidence is legally insufficient to establish he was guilty beyond a reasonable doubt of
driving while intoxicated. We disagree. 

 The record reflects that after Officer Marcus witnessed Ruthenberg turn without signaling, he began to follow him. Officer
Marcus next observed Ruthenberg moving from lane to lane without signaling, straddling both lanes, and turning without
signaling. Further, after stopping Ruthenberg, Officer Marcus testified he observed Ruthenberg to have glassy eyes, a strong
odor of alcohol on his breath, and slurred speech. Finally, there was evidence that Ruthenberg was slow to respond to
Officer Marcus' requests, he maintained a constant sway as he stood by his vehicle, and he could not successfully perform
the field sobriety tests that were administered. Given this evidence, as well as Officer Marcus' testimony, based upon his
sixteen years of experience as a police officer, that he believed Ruthenberg had lost the normal use of his mental and
physical faculties due to the introduction of alcohol, we find the evidence was legally sufficient to establish that Ruthenberg
was driving while intoxicated. See Jackson, 443 U.S. at 319; Mosley, 983 S.W.2d at 254. Further, the intoxilyzer results,
obtained only twenty-one minutes after Ruthenberg's arrest, lend further support to the jury's verdict that Ruthenberg was
intoxicated at the time he was driving. See Jackson, 443 U.S. at 319; Mosley, 983 S.W.2d at 254. 

 Ruthenberg further argues that the evidence was factually insufficient to establish he was driving while intoxicated. (2) 
Initially, he points to the fact that Officer Marcus testified Ruthenburg's plates came back clean; therefore, Officer Marcus
had no reason to follow or stop Ruthenberg and would not have, were it not for the fact that he recognized Ruthenberg from
a prior incident. "A police officer, however, is as free to follow [a] vehicle as any other citizen would be." Cooper v. State,
No. 2-04-235-CR, 2004 WL 2847807, at *1 (Tex. App.--Fort Worth Dec. 9, 2004, no pet.) (not designated for publication).
And although Officer Marcus testified that he recognized Ruthenberg, he stated that he began to follow Ruthenberg after
observing him turn without signaling and stopped him after observing him commit several traffic infractions. A brief,
investigatory stop is allowed when an officer has an objectively reasonable and articulable suspicion that criminal activity is
afoot. Illinois v. Wardlow, 528 U.S. 119, 123 (2000); Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App.), cert.
denied, 126 S. Ct. 1172 (2006). Thus, Officer Marcus' actions in following and detaining Ruthenberg were clearly justified.
Wardlow, 528 U.S. at 123; Brother, 166 S.W.3d at 257.

 Ruthenberg also takes issue with the fact that although Officer Marcus testified that vertical nystagmus indicates a presence
of drugs or a high level of alcohol and Ruthenberg asserted that he had not been drinking, Officer Marcus did not pursue
any investigation into whether Ruthenberg was taking prescribed medication. Nevertheless, Officer Marcus testified, based
on his sixteen years of experience as a police officer, including his experience on the DWI task force and as a certified
instructor in standardized field sobriety tests, that he believed Ruthenburg had lost the normal use of his faculties due to the
introduction of alcohol. Officer Marcus based his belief on Ruthenberg's slurred speech, slow responses, odor of alcohol,
glassy eyes, and two inch sway, as well as his inability to successfully perform the field sobriety tests administered. See
State v. Kurtz, 152 S.W.3d 72, 85 (Tex. Crim. App. 2004) (probable cause to arrest established by results of field sobriety
tests and the fact that officer detected the smell of alcohol). Moreover, given the breath test results in the instant case, which
Ruthenberg does not appear to challenge, the evidence overwhelmingly supports the jury's verdict. See Prible v State, 175
S.W.3d 724, 729-30 (Tex. Crim. App.), cert. denied, 126 S. Ct. 481 (2005). 

 Ruthenburg further complains that Officer Marcus couldn't recall whether four or six clues on the HGN indicates an 80
percent likelihood that a person is intoxicated, and further, was unsure whether the walk and turn test involved nine possible
clues or eight. However, any lapse in memory was irrelevant because Officer Marcus testified that Ruthenberg displayed all
six clues on the HGN and a minimum of eight clues on the walk and turn test; moreover, Ruthenberg stumbled and would
have fallen had Officer Marcus not caught him, resulting in Officer Marcus' decision not to administer further field tests for
Ruthenberg's safety. Nevertheless, Ruthenberg also points to Officer Marcus' testimony that Ruthenberg was cooperative,
insisted on taking the breath test, had an orderly appearance and was very polite in support of his position that the evidence
was factually insufficient to support a verdict of guilt. In view of the evidence presented, we do not find that the jury's
verdict was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Cain, 958 S.W.2d
at 407 (quoting Clewis, 922 S.W.2d at 129). Nor do we find that the jury's verdict was against the great weight and
preponderance of the evidence. Watson, 204 S.W.3d at 414. Ruthenberg's first and second issues are denied.

Ineffective Assistance of Counsel 

 Ineffective assistance of counsel claims are measured against the two-prong test established by the Supreme Court in
Strickland v. Washington, 466 U.S. 668, 687 (1984). See Hernandez v. State, 726 S.W.2d 53, 55-57 ( Tex. Crim. App.
1986) (applying Strickland test). An appellant must first show that his attorney's performance was deficient, i.e., that his
assistance fell below an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999). Second, assuming the appellant has demonstrated deficient assistance, he must affirmatively prove prejudice. Id. 
Thus, the appellant must show a reasonable probability that, but for his attorney's unprofessional errors, the result of the
proceeding would have been different. Id. The failure to make the required showing of either deficient performance or
sufficient prejudice defeats the ineffectiveness claim. Id. at 813. Absent both showings, we cannot conclude that the
conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Id. An appellant bears
the burden of proving by a preponderance of the evidence that counsel was ineffective, and we look to the totality of the
representation and the particular circumstances of each in evaluating the effectiveness of counsel. Id. When reviewing a
claim of ineffective assistance of counsel, we defer to trial counsel and avoid "deleterious effects of hindsight." Id. There is
a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Id. 

 Further, the assessment of whether a defendant received effective assistance of counsel must be made according to the facts
of each case. Id. Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively
demonstrate the alleged ineffectiveness. Id.Under normal circumstances, the record on direct appeal will not be sufficient to
show that counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome
the presumption that counsel's conduct was reasonable and professional. Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim.
App. 2002). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the
merits of such a serious allegation. Id.; Thompson, 9 S.W.3d at 813. In the majority of cases, the record on direct appeal is
simply undeveloped and cannot adequately reflect the failings of trial counsel. Bone, 77 S.W.3d at 833.

II. Ruthenberg's Claim of Ineffective Assistance of Counsel

 In his final issue, Ruthenberg argues that he was denied effective assistance of counsel and points to the following alleged
errors of his trial counsel in support of his position:

 1) the failure to file pretrial motions, including a motion to suppress evidence based on a lack of reasonable suspicion and
probable cause to arrest, and a motion in limine excluding any mention of any extraneous offense conduct whether
adjudicated or not; (3)

 2) the failure to question the voir dire panel on any potential bias and other constitutional issues; 

 3) the failure to present an opening statement;

 4) the failure to properly object and move for a mistrial after the State introduced extraneous offense conduct;

 5) the failure to cross-examine the arresting officer on critical facts, as well as his credibility;

 6) the failure to cross-examine the breath test technical supervisor on critical issues;

 7) the failure to request a jury instruction on reasonable suspicion and probable cause; and

 8) the introduction of extraneous offense conduct harmful to Ruthenberg.



 

1. Failure to File Motions

 Initially Ruthenberg argues that trial counsel should have filed a motion to suppress evidence on the grounds that Officer
Marcus lacked reasonable suspicion or probable cause to search and seize him. He further argues that had this motion been
filed and granted, the State would not have been allowed to admit anything into evidence after the initial stop. However,
notwithstanding Ruthenberg's assertions to the contrary, the record reflects that Officer Marcus began to follow him after
observing him turn without signaling. Further, Officer Marcus did not detain Ruthenberg until after he observed him
committing not one but several traffic infractions, including: moving from lane to lane without signaling, straddling both
lanes, and turning without signaling. 

 "In order to temporarily detain an individual for investigation, an officer need only articulate specific facts that, taken
together with rational inferences from those facts, give rise to a reasonable suspicion of criminally related activity." Ferrell
v. State, No. 04-05-00652-CR, 2006 WL 2871287, at *1 (Tex. App.--San Antonio Oct. 11, 2006, no pet.) (not designated
for publication); see also Held v. State, 948 S.W.2d 45, 51 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). Thus, in the
present case, Ruthenberg's traffic infractions were more than sufficient to give rise to a reasonable suspicion of criminally
related activity and thereby, justified the initial traffic stop. Ferrell, 2006 WL 2871287, at *1. Accordingly, we cannot say
trial counsel's decision not to file a motion to suppress was so deficient and lacking in tactical or strategic decision-making
as to overcome the presumption that trial counsel's conduct was reasonable and professional. See Bone, 77 S.W.3d at 833;
see also Saenz v. State, 103 S.W.3d 541, 546 (Tex. App.--San Antonio 2003 pet. ref'd) (explaining that the failure to object
to admissible evidence does not amount to ineffective assistance). 

2. Extraneous Offense (4)

 Ruthenberg further contends that he was denied effective assistance of counsel as a result of trial counsel's failure to file a
motion in limine excluding extraneous offenses, failure to properly object to extraneous offense conduct and further, trial
counsel's introduction of extraneous offense conduct that was harmful to Ruthenberg. Ruthenberg points to the following
passage in the record in support of his contention: 

 Q. [By Ms. Schlueter] Okay. Did the defendant's car pass you?

 A. [By Officer Marcus] Yes, ma'am.

 Q. Did you run his license plates?

 A. Yes, ma'am.

 Q. Okay.

 

 MS. SCHLUETER: Your Honor, may we approach?

 (Bench conference.) 

 MS. SCHLUETER: I want to ask you before we go into this. This officer had occasion to come into contact with the
defendant a couple of weeks prior to this with regard to another incident. And so according to that he had knowledge of this
defendant. And, I guess, when he ran the plates, it indicated he had insurance but also that he [sic] occasion to come into
contact with him in the past.

 THE COURT: You can't go into that.

 MS. SCHLUETER: I didn't think so but I wanted to check.

 (End of bench conference.)



 Q. (By Ms. Schlueter) All right. So you ran his plates. Did his plates come back clean?

 A. [By Officer Marcus] Yes, ma'am.

 Q. There were no warrants or anything that would cause you to be concerned about him?

 A. Not about the license plates, no, ma'am.

 Q. Okay. What did you do next then with regard to this specific defendant?

 A. Once I realized who he was as far as he was involved in something previously to this incident -



 MR. GLASS: Objection, Your Honor.

 THE COURT: That will be sustained. You need to instruct your witness very quietly. Whisper in his ear. Okay.

 MS. SCHLUETER: May I approach him briefly?

 THE COURT: Uh-huh.



(Emphasis added.) The record reflects that the State had no intention of eliciting testimony regarding the prior incident and
even sought clarification from the trial judge before questioning the officer further regarding his initial contact with
Ruthenberg. Thus, even if trial counsel had filed a motion in limine, the same testimony might just as easily have come in.
And while trial counsel objected but did not otherwise request an instruction and thereafter, a mistrial, Ruthenberg has the
burden of showing that trial counsel's representation was so deficient and so lacking in tactical or strategic decision-making
as to overcome the presumption that counsel's conduct was reasonable and professional. See Bone, 77 S.W.3d at 833. In
accordance with Strickland, Ruthenberg must also show that but for his attorney's unprofessional errors, the result of the
proceeding would have been different. See Thompson, 9 S.W.3d at 812. Because the record in the present case contains
insufficient information to permit this court to fairly evaluate the merits of Ruthenberg's allegations, we find Ruthenberg
has failed to meet his burden. See id. at 813.

 Additionally, Ruthenberg also objects to the following arguments presented by his trial counsel during closing arguments:

 One of the other things you may have noticed or may not have noticed was that near the end of our questioning he said,
"Well, once I realized who it was." You get the impression he knew this defendant. He knew this defendant was a Bexar
County Sheriff's officer. Once again, I ask you - You are the judges of the facts. You get to choose credibility. What are the
motives? What are the motives for people telling the truth and not telling the truth?



Ruthenberg argues that in raising the issue of a prior incident in his closing argument, trial counsel failed to follow the
court's instructions as well as his own trial strategy in keeping this evidence out. However, the record reflects that trial
counsel did not mention any extraneous conduct in his closing but only the fact that Officer Marcus may have known
Ruthenberg, who was a Sheriff's officer, and perhaps, had a motive to lie in this case. Further, the record is silent as to what
trial counsel's strategy was regarding the evidence; accordingly, Ruthenberg has failed to present evidence in the record
rebutting the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. See
id. at 813.

3. Failure to Request Jury Instruction

 Next Ruthenberg argues that if trial counsel had filed a motion to suppress and the trial court denied said motion, trial
counsel could have then asked for a jury instruction on reasonable suspicion and probable cause. However, having
previously determined that Officer Marcus had reasonable suspicion to detain and probable cause to arrest Ruthenberg, we
hold that Ruthenberg has failed to show that trial counsel's omission in filing a motion to suppress and thereafter, requesting
a jury instruction, amounted to deficient assistance; therefore, this complaint is without merit. See id. at 812.

4. Failure to Question Members of the Venire Panel

 Ruthenberg also maintains that trial counsel failed to question the members of the venire panel regarding potential bias and
other constitutional issues and that this omission constituted ineffective assistance of counsel. In particular, Ruthenberg
appears to take issue with the fact that trial counsel did not follow up on comments made by members of the venire panel
who were unsure whether they could weigh the credibility of an officer the same as a lay person. The record reflects the
following exchange between members of the venire panel and the state's attorney:

 MS. SCHLUETER: . . . The next subject is does anybody have a problem with police officers? As I mentioned before, we
have a client or the defendant here today is a police officer. And, obviously, one of our witnesses will be the police officer
that came into contact with him. Our officer's name, by the way, is Charles Marcus. Has anybody heard of this officer or had
any experience with him? I know a few of you also said on your little questionnaire forms you were related to police
officers. Who were those? Number 19? Who else? You're Number 9. Okay. Given that - Who are you related to that is a
police officer?

 PROSPECTIVE JUROR: I have a cousin that is a deputy here.

 MS. SCHLUETER: Okay. A cousin. And you, ma'am?

 PROSPECTIVE JUROR: I got two brothers.

 MS. SCHLUETER: Two brothers. Given your relationship with your brothers, do you think you would give more
credibility or more weight to the testimony of a police officer than some lay witness, say just somebody off the
street?

 PROSPECTIVE JUROR: I don't know.

 MS. SCHLUETER: You don't know. Number 9, what do you think?

 PROSPECTIVE JUROR: No. I don't think I would.

 MS. SCHLUETER: Okay. Just want to be clear. Just because someone is wearing a uniform doesn't make them better than
any other witness. They may have more experience in dealing with intoxicated persons in a DWI case or they have more
experience in a lot of crimes than, say, you or I. It certainly doesn't mean we can give their testimony more or less weight.



(Emphasis added.) Thus, venire members 9 and 19 both responded that they had family members who were either police
officers or sheriff's deputies in San Antonio. Ruthenberg states in his brief that "[w]hen the State asked if they could weigh
[sic] officers credibility the same as a lay witnesses [sic] they answered, 'I don't know,' and 'I don't think so.'" However, the
record reflects that the question the State actually asked was "Given your relationship with your brothers, do you think you
would givemore credibility or more weight to the testimony of a police officer . . . ?" Thus, venire member number 9's
response, "No. I don't think I would," did not require any follow up questions by Ruthenberg's trial counsel. And while
venire member number 19 responded that she didn't know if she would give more credibility or weight to the testimony of a
police officer, it is unclear from the record whether this venire person was subsequently asked additional questions by either
side. 

 Further, the record reflects that the members of the venire panel were subsequently thoroughly questioned by both sides
regarding potential biases involving officers either as witnesses or defendants. Thus, while Ruthenberg contends that trial
counsel's failure to question the members of the venire panel regarding potential bias and other constitutional issues
constituted ineffective assistance of counsel, the record does not affirmatively demonstrate the alleged ineffectiveness. See
id. at 812.5. Failure to Present An Opening Statement

 Ruthenberg next complains that trial counsel's failure to present an opening statement amounts to ineffective assistance of
counsel. However, the decision to not present an opening statement does not necessarily render ineffective assistance.
Calderon v. State, 950 S.W.2d 121, 127-28 (Tex. App.--El Paso 1997, no pet.). Because presenting an opening statement
provides the State with a preview of the defense strategy, the failure to present an opening statement is a valid tactical
decision. See Standerford v. State, 928 S.W.2d 688, 697 (Tex. App.--Fort Worth 1996, no pet.). Moreover, Ruthenberg does
not direct this court to any part of the record that indicates he was prejudiced by trial counsel's decision not to present an
opening statement. See Thompson, 9 S.W.3d at 813. Accordingly, Ruthenberg's complaint that trial counsel did not present
an opening statement does not rebut the presumption that counsel acted reasonably in making this tactical decision. See
Taylor v. State, 947 S.W.2d 698, 704 (Tex. App.--Fort Worth 1997, pet. ref'd). 



6. Failure to Cross-Examine Arresting Officer and Breath Test Technical Supervisor

 Finally, Ruthenberg objects to trial counsel's failure to cross-examine the arresting officer "on critical facts and the officer's
credibility when that was his sole defense presented," and the "breath test technical supervisor on critical issues to provide
doubt in the jury's minds." In the present case, trial counsel did cross-examine both witnesses and was in a better position
to evaluate the witnesses as well as the disposition and response of the judge and jury. However, the record is silent as to
trial counsel's strategy in conducting his cross-examination. Because we must defer to trial counsel in reviewing a claim of
ineffective assistance of counsel and avoid the "deleterious effects of hindsight," we hold that Ruthenberg has not overcome
the presumption that trial counsel provided reasonably effective professional assistance at trial or that he was prejudiced by
counsel's actions. Thompson, 9 S.W.3d at 813. Ruthenberg's third issue is overruled. 

Conclusion


 The evidence is legally and factually sufficient to support the jury's verdict of guilt in this case and further, Ruthenberg was
not denied effective assistance of counsel; accordingly, we affirm the trial court's judgment.

 Karen Angelini, Justice



Do Not Publish 



1. This involves driving in the same direction as the suspect vehicle but on a different street so as to avoid detection. The
officer then "happens" upon the suspect vehicle further down the road and is afforded another opportunity to observe the
driver of the vehicle. 

2. Ruthenberg also states in his brief that because Officer Marcus admitted there was an error in his police report that the
evidence is factually insufficient to support a verdict of guilty in this case; however, he does not address this argument
further and even omits identifying the alleged error in the report. Our review of the record reflects only one "error" to speak
of; that is, Officer Marcus testified that he stopped Ruthenberg on East Dewey between North Main and Ogden rather than
North Main and Ogden as stated in his report. Clearly this error, if indeed it can be considered such, has no bearing on the
factual or legal sufficiency of the evidence in this case. 

3. Ruthenberg's trial attorney did, in fact, file several pretrial motions, including a Motion For Special Prosecutor and a
Motion For Continuance.

4. In addressing Ruthenberg's complaints regarding ineffective assistance of counsel, we have combined several related
issues.