**Thomas Eric BROTHER, Jr.**

v.

**The STATE of Texas.**

**No. PD–1820–02.**

Court of Criminal Appeals of Texas.

June 29, 2005.

J. Don Carter, Fort Worth, for appellant.

Tanya S. Dohoney, Assist. DA, Fort Worth, Matthew Paul, State's Attorney, Austin, for State of Texas.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

Appellant was charged with driving while intoxicated by misdemeanor information. He filed a pre-trial motion to suppress evidence, claiming, *inter alia,* that (1) the officer did not have reasonable suspicion to stop his vehicle for DWI and (2) the stop was prohibited by Article 14.03 of the Texas Code of Criminal Procedure. After a hearing, the trial court denied appellant's motion to suppress. Appellant pleaded guilty to the offense but appealed the trial court's denial of his motion to suppress. The court of appeals affirmed the trial court's ruling. *Brother v. State,* 85 S.W.3d 377, 385 (Tex.App.-Fort Worth 2002). We granted review to determine whether the court of appeals erred in affirming the trial court's implicit conclusion that the officer had reasonable suspicion to stop appellant's car and that the officer had statutory authority to make the stop outside his geographical jurisdiction, the City of Hurst. We affirm the judgment of the court of appeals.

### ANALYSIS AND HOLDINGS

#### I. *Fourth Amendment*

Based on the following facts, the court of appeals concluded that the arresting officer had reasonable suspicion to stop appellant's car. Appellant's erratic driving was reported by a citizen who called "911" on her cell phone after she witnessed appellant speeding, tailgating, and weaving across several lanes of traffic. The citizen,

who continued to monitor appellant's driving by following appellant in her car, kept in contact with the "911" dispatcher until the arresting officer stopped appellant. The citizen testified at the suppression hearing that the dispatcher instructed her to follow appellant and activate her hazard lights so that the responding officer would be able to identify the correct vehicle. The citizen remained at the scene after the stop, and she provided the officer with her contact information. The court of appeals concluded that, although the officer did not witness the erratic driving, the detailed information he received, from the "911" dispatcher was sufficient to warrant the traffic stop. *Brother v. State,* 85 S.W.3d at 381–82.

The crux of appellant's complaint is that the officer did not *personally* observe any activity that would give rise to a reasonable suspicion that DWI was afoot. However, the record reflects that the officer received facts of appellant's erratic driving from the dispatcher before he stopped appellant's car. Specifically, the officer testified at the suppression hearing that "[d]ispatch advised me a caller was on 911 from a cell phone, and was following what [she] thought could be an intoxicated driver. . . . Dispatch stayed on the line with the caller and was updating me as the call progressed. . . . From what dispatch was describing, it sounded like a possible intoxicated driver." The officer further testified that he knew which car to stop because the

dispatcher had provided him with the license plate number and that the citizen had been instructed to follow behind appellant's car with her hazard lights on. Thus, based on this testimony and the following analysis, we hold that the officer was apprised of sufficient facts by which to conclude that criminal activity, i.e., DWI, was afoot.[1]

█ Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). These facts must amount to more than a mere hunch or suspicion. *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997).

█ The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). For example, in *Armendariz v. State,* we held that a stop based on facts observed by an undercover officer and transmitted by radio to a deputy sheriff did not violate the Fourth Amendment. 123 S.W.3d 401, 404 (Tex.Crim.App.2003), *cert. denied,* 541 U.S. 974, 124 S.Ct. 1883, 158 L.Ed.2d 469 (2004).

---

1. Appellant seems to argue that the stop was unlawful because, although the *dispatcher* may have received specific facts from the citizen, the *officer* did not receive any facts from the dispatcher that would provide a legitimate basis for the stop. Specifically, appellant complains that, "[t]here was no specific conduct communicated to [the officer] before he stopped Appellant's car" and "The court of appeals erroneously cites the facts known to the police dispatcher and not facts known by or communicated to [the officer]." Although there was no testimony at the sup-

pression hearing that the dispatcher relayed any specific facts about appellant's driving to the officer, the audiotape of the call from the dispatcher to the officer was admitted into evidence and played in open court. We have reviewed the tape and find that the dispatcher relayed specific facts about appellant's driving to the officer. Moreover, the detail of the dispatcher's information leads us to conclude that, not only did the officer have *reasonable suspicion* to stop appellant's car, the officer had *probable cause* to make the arrest for DWI.

It has been widely recognized that the reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her. *State v. Markus,* 478 N.W.2d 405 (Iowa Ct.App.1991).[2]

In *Pipkin v. State,* the Fort Worth court of appeals held that a stop based on facts relayed to law enforcement by a citizen cell phone caller were sufficiently corroborated and the stop was justified, even though the officer did not personally witness any erratic driving. 114 S.W.3d 649, 654 (Tex.App.-Fort Worth 2003, no pet.). The citizen-witness testified that he called "911" because Pipkin was driving thirty miles per hour under the posted speed limit; and as the caller drove by Pipkin's car, the caller saw Pipkin smoking a crack pipe. The Fort Worth Court concluded that the stop was reasonable because the caller was a disinterested private citizen who provided law enforcement with a detailed description of Pipkin's car and location and made himself accountable for his intervention by providing his contact information to the dispatcher. *Id.* at 655–56. Looking to its own precedent, the Fort Worth court held that the facts relayed to the dispatcher, which detailed Pipkin's driving and described his criminal behavior, in addition to the description and location of the vehicle, provided adequate corroboration for the officer to have reasonably concluded that the information given to him was reliable and a temporary detention was justified. *See id.* at 655–56.[3]

Here, the citizen gave a detailed description of appellant's car and location, as well as his erratic driving. As requested by the "911" dispatcher, the citizen followed behind the suspect with her emergency lights on, which assisted the officer in identifying the proper vehicle. Throughout the incident, the citizen kept in contact with the "911" dispatcher, and she remained at the scene after appellant's car was stopped by police. There, she provided police with her contact information. She later appeared as a witness at the suppression hearing, and she testified about her firsthand observations. Relying on the information supplied by the citizen, the officer testified he was able to locate and identify appellant's vehicle. And, as noted, the officer testified that the facts relayed to him through the "911" dispatcher caused him to believe that appellant was driving while intoxicated.

Appellant's argument that an officer must *personally* witness facts giving rise

---

**2.** *See also, Chambers v. Maroney,* 399 U.S. 42, 46–47, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Jaben v. United States,* 381 U.S. 214, 224, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); *Webb v. State,* 760 S.W.2d 263, 274–75 (Tex.Crim.App. 1988) (holding that information from citizen-witness was sufficiently reliable under totality of the circumstances, even though officer did not obtain witness's name); *United States v. Sierra–Hernandez,* 581 F.2d 760, 763 & n. 1 (9th Cir.1978) (although information supplied by citizen informant is not *per se* reliable, such information should be given serious attention and great weight); *State v. Paszek,* 50 Wis.2d 619, 184 N.W.2d 836, 842–43 (1971) (distinguishing paid informants from ordinary citizen informants). *See* 2 LaFave, Search and Seizure, § 3.4 (3 ed 1996).

**3.** Citing *State v. Stolte,* 991 S.W.2d 336, 341 (Tex.App.-Fort Worth 1999, no pet). In *Stolte,* detailed information from an unidentified citizen cell phone caller, alleging erratic driving and identifying the suspect's car and location, was relayed to the arresting officer by police dispatch. The Fort Worth court reasoned that, in addition to the detailed information provided, the tip bore sufficient indicia of reliability because the witness was a concerned citizen rather than a paid government informant, and the caller permitted himself to be identified after the stop. *See id.* at 340–43.

to criminal activity, is against the great weight of authority.[4] The federal courts and our lower Texas courts have consistently held that a stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer,[5] do not run afoul of the Fourth Amendment.

Moreover, appellant's argument is simply unsound. To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny. *See Terry*, 392 U.S. at 29, 88 S.Ct. 1868 ("The sole justification of the search ... is the protection of the police officer and others nearby....").[6] Accordingly, we hold that the court of appeals did not err in concluding that, under the totali-

---

**4.** *United States v. Wheat*, 278 F.3d 722, 724 (8th Cir.2001), *cert. denied*, 537 U.S. 850, 123 S.Ct. 194, 154 L.Ed.2d 81 (2002); *Bilyeu v. State*, 136 S.W.3d 691, 696–97 (Tex.App.-Texarkana 2004); *Reesing v. State*, 140 S.W.3d 732, 737 (Tex.App.-Austin 2004, pet. ref'd); *Hawes v. State*, 125 S.W.3d 535, 538–540 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stop upheld where unidentified citizen tipster, who approached officer on street but was never identified, saw driver asleep at wheel of car at green light; tip was then corroborated by the slow operation of the car); *State v. Fudge*, 42 S.W.3d 226, 232 (Tex.App.-Austin 2001, no pet.) (holding reasonable suspicion existed to support detention based solely on cab driver's unsolicited personal report to officer about erratic driving); *State v. Garcia*, 25 S.W.3d 908, 913–14 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (holding that reliability of the informant's tip, combined with the officer's subsequent corroboration of details, provided reasonable suspicion for investigative detention); *Hime v. State*, 998 S.W.2d 893, 895–96 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) (stop for DWI investigation was reasonable based on tip from eyewitness who provided name to police); *Glover v. State*, 870 S.W.2d 198, 199–200 (Tex.App.-Fort Worth 1994, pet. ref'd) (upholding stop based solely on facts supplied by unidentified EMS personnel); *Stolte*, 991 S.W.2d at 341; *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995). *Cf. Johnson v. State*, 146 S.W.3d 719 (Tex.App.-Texarkana 2004, no pet.) (holding that stop based solely on anonymous tip with no corroboration by the officer that indicated criminal activity was underway was insufficient, even where the officer testified that the stop took place in high crime area); *Davis v. State*, 989 S.W.2d 859 (Tex.App.-Austin 1999, pet. ref'd) (holding specific facts relating to description of suspects, the vehicle and its whereabouts, were insufficient where allegation of unknown telephone caller included reckless driving and "possible" possession of marijuana); *Stewart v. State*, 22 S.W.3d 646 (Tex.App.-Austin 2000, pet. ref'd) (holding that stop unjustified on basis of telephone caller, who was never identified, alleging that driver of green Camero, in convenience store parking lot, fell over before getting into his car). *See also*, Note, *Search and Seizure: Law Enforcement Officers' Ability to Conduct Investigative Traffic Stops Based Upon An Anonymous Tip Alleging Dangerous Driving When the Officers Do Not Personally Observe Any Traffic Violations*, 34 U. Mem. L.Rev. 173 (2003).

**5.** Corroboration does not mean that the officer *must* personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. 1921; *Pipkin*, 114 S.W.3d at 654. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified. *Alabama v. White*, 496 U.S. 325, 330–31, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Pipkin*, 114 S.W.3d at 654.

**6.** *See Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (the Fourth Amendment does not require police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal to escape"); *Terry*, 392 U.S. at 20–21, 27, 88 S.Ct. 1868 (balancing the government's interest against the degree of intrusion upon individual rights and concluding that the government's interest in crime prevention and detection outweighed the limited intrusion of a

ty of the circumstances, the stop was reasonable under the Fourth Amendment. *See Alabama v. White*, 496 U.S. at 331, 110 S.Ct. 2412; *Pipkin*, 114 S.W.3d at 654.

## II. *Article 14.03(g)*

Article 14.03 of the Texas Code of Criminal Procedure provides that city police officers may not stop and arrest persons for traffic violations committed outside the officers' geographical jurisdiction. TEX.CODE CRIM. PROC. ANN. art. 14.03(g); *State v. Kurtz*, 152 S.W.3d 72, 77 (Tex. Crim.App.2004). Appellant was stopped outside the City of Hurst but within Tarrant County. The arresting officer was a licensed peace officer of the City of Hurst. *See* art. 14.03(g) (defining officers who may and may not stop persons for traffic offenses committed within their view but outside their jurisdiction).

Construing Article 14.03 and the applicable common law decisions, the court of appeals held that the stop was not prohibited because "a city officer's geographical jurisdiction is county-wide." *See Brother v. State*, 85 S.W.3d at 384–85. Although the court of appeals reached the right result, the focus of its conclusion was misdirected. That is, it was not necessary for the court of appeals to determine whether the officer had jurisdiction to stop appellant for mere traffic offenses, because subsection (g) provides that an officer outside his jurisdiction may stop a person who is driving while intoxicated. *See* Art. 14.03(g) ("A peace officer ... who is licensed under the Government Code, and is

outside of [his] jurisdiction may arrest without a warrant a person who commits *any* offense within the officer's presence or view, except that an officer outside the officer's jurisdiction may arrest a person for a violation of [the Transportation Code] only if [he is a Ranger or a DPS officer].") (emphasis added).

Appellant was stopped outside the arresting officer's jurisdiction based on the officer's probable cause that DWI was underway, and the officer so testified. The officer was resolute that the caller had provided facts which led him to believe that DWI—not traffic offenses—was afoot. Therefore, Article 14.03(g) did not prohibit the stop outside the officer's jurisdiction. *See Kurtz*, 152 S.W.3d at 79.

## III. *Article 14.03(d)*

Moreover, Article 14.03(d) further authorized the stop. Subsection (d) provides that an officer may make an extra-jurisdictional stop for felony offenses, disorderly conduct offenses under Chapter 42, intoxication offenses under Chapter 49, and breaches of the peace that are committed within the officer's view. *See* Art. 14.03(d). Based on the officer's testimony here, the trial court could have reasonably found that an intoxication offense was taking place. Therefore, the stop was authorized by both subsections (d) and (g). *Compare State v. Kurtz*, 152 S.W.3d at 78–79 (extra-jurisdictional stop based on only traffic offenses could not be upheld as stop based on breach of the peace because record facts did not support such a stop).

brief investigative stop upon an individual's personal liberty); *Stolte*, 991 S.W.2d at 342 & 343 n. 4 ("it would be wholly unreasonable, under these facts, to require a police officer to 'corroborate' an informant's tip by waiting for the suspect to swerve out of his lane or other-

wise jeopardize the safety of other drivers"); *State v. Slater*, 267 Kan. 694, 986 P.2d 1038, 1050 (1999) (when balancing private and public rights in DWI prosecution, "the equation must be weighed in favor of protecting the public and removing the danger").

#### IV. *Conclusion*

We affirm the judgment of the court of appeals.

WOMACK, J., joined as to part III.