COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-273-CR

 

 

GREGORY SCOTT NIETO                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM COUNTY
CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Gregory Scott Nieto of
driving while intoxicated (DWI), and the trial court sentenced him to 160 days=
incarceration in Denton County Jail, probated for twenty-four months, and a
$600 fine.  In one point, Appellant
challenges the trial court=s denial
of his motion to suppress the fruits of his detention and arrest.  Because we hold that the trial court did not
err by denying Appellant=s motion to suppress, we affirm
the trial court=s judgment.

At approximately 7:30 a.m. on September 18, 2005,
Lewisville police officer David Moulton was dispatched via his in-car computer
in response to a call originally made to the Denton County Sheriff=s
Department and transferred to the Lewisville Police Department.  The computer gave Moulton information as to
the nature of the call, the location of the call, the name the caller had
given, and the telephone number the caller had given the police.  The caller stated that she was driving southbound
on the interstate (I-35) and had observed a vehicle Aall over
the roadway@ and Agoing
from lane to lane.@ 
She described the car, which she was following, as a dark-colored
Mustang with a spoiler and described her own vehicle as a light-colored
SUV.  She was asked to turn on her hazard
lights so that the officer could identify her.








Moulton testified that a few moments after
receiving the dispatch, he observed a dark Mustang traveling south on the
interstate, followed by a silver Hyundai Sante Fe with its hazard lights
on.  Moulton followed the Mustang through
a construction zone for approximately an eighth of a mile before stopping
it.  Moulton did not observe the Mustang
commit any traffic violations before pulling it over.  After Moulton and the Mustang stopped, the
driver of the SUV passed the location, pointing at the Mustang and nodding her
head, but she did not stop behind Moulton as dispatch had requested.  Moulton ultimately arrested the driver of the
Mustang, Appellant, for DWI.  Moulton
testified that after the arrest, he used the telephone number provided to
contact the caller, and she told him that she lived in East Texas and that she
was not able to stop at the scene but had to continue on.

In support of Appellant=s motion
to suppress, Brian Galindo, a private investigator, testified that he had
obtained the name given by the caller, Nadia Starber, from the police
report.  He did a nationwide search and
was unable to locate anyone named Nadia Starber.  He found that the telephone number given was
registered to a AGregory Lively,@
although the voicemail at the telephone number indicated that the telephone
belonged to a ATammy.@  He located a ATammy
Lively@ in the
same area, but she denied having that telephone number.








As the State points out, because the facts
related to the trial court=s ruling
are undisputed, we conduct a de novo review of the trial court=s
application of the law to the facts.[2]  Because there was no request for the trial
court to enter findings of fact, we review the evidence in the light most
favorable to the trial court=s ruling
and must sustain the trial court=s
decision if correct under any applicable theory of law.[3]

As the Texas Court of Criminal Appeals has
explained,

Under the Fourth Amendment, a temporary detention is justified when
the detaining officer has specific articulable facts which, taken together with
rational inferences from those facts, lead the officer to conclude that the
person detained is, has been, or soon will be engaged in criminal activity.  These facts must amount to more than a mere
hunch or suspicion.

 

The factual basis for stopping a vehicle need not arise from the
officer's personal observation, but may be supplied by information acquired
from another person.  For example, . . .
we [have] held that a stop based on facts observed by an undercover officer and
transmitted by radio to a deputy sheriff did not violate the Fourth Amendment.

 

It has been widely recognized that the reliability of a citizen‑informant
is generally shown by the very nature of the circumstances under which the
incriminating information became known to him or her.[4]


 








A[A] stop
based on facts supplied by a citizen-eyewitness, which are adequately
corroborated by the arresting officer, do[es] not run afoul of the Fourth
Amendment.@[5]  As the State argues, corroboration does not
mean that the officer must personally observe the possible criminal activity;
rather, it refers to whether the police officer, in light of the circumstances,
is able to confirm enough facts to reasonably conclude that the information
given to him or her is reliable, justifying the temporary detention.[6]  In cases such as this, we look to the
information known by the police officer at the time of the detention.[7]  To justify the detention, it is sufficient
that a credible person provides verifiable information that leads the officer
to believe that a crime is in progress.[8]  A citizen informant is deemed credible if she
provides information by which she can be identified and remains at the scene
for a sufficient time to make sure that the officer has received all the
information she can provide and that the police officer has fixed on to the
correct vehicle or suspect.[9]








In the instant case, the citizen informant
provided a name, a telephone number, and a description of the suspect vehicle
and of her own automobile.  She followed
the suspect vehicle, and, at the request of the police, turned on her hazard
lights.  She continued to follow the
suspect vehicle until the police officer began to pursue it.  She remained behind the police officer until
he had succeeded in pulling the suspect vehicle over.  Instead of stopping as instructed, she passed
the officer and the suspect vehicle and signaled to the officer that he had
pulled over the correct car, but the officer was able to reach her at the
telephone number provided.

It is unclear whether she gave a false name or
what name she did provide, but challenges to the citizen informant=s
credibility were not known to the officer at the time he detained
Appellant.  It was only after the
investigation and Appellant=s arrest
that the credibility of the citizen informant was challenged.  The officer had no reason to believe that she
had provided a false name, especially in light of the fact that he was able to
contact her after the detention by calling the telephone number that she had
provided.

 

 

 

 

 








We consequently hold that the trial court did not
err by overruling Appellant=s motion
to suppress.  We overrule Appellant=s sole
point and affirm the trial court=s
judgment.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED:  August 31, 2007











[1]See Tex. R. App. P.
47.4.





[2]See Brother v. State, 85 S.W.3d 377, 380-81 (Tex. App.CFort Worth 2002), aff=d, 166 S.W.3d 255 (Tex. Crim. App. 2005), cert.
denied, 546 U.S. 1150 (2006).





[3]See State v. Cullen, 195 S.W.3d 696, 698-99 (Tex. Crim. App. 2006); Maxwell v. State,
73 S.W.3d 278, 281 (Tex. Crim. App.), cert. denied, 537 U.S. 1051
(2002).





[4]Brother v. State, 166 S.W.3d 255, 257-58 (Tex. Crim. App. 2005) (citations omitted).





[5]Id. at 259.





[6]See id. at
259 & n.5.





[7]Davis v. State,
947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (The existence of reasonable
suspicion is determined under an objective standard, namely, Awould
the facts available to the officer at the moment of the seizure or search
warrant a [person] of reasonable caution in the belief that the action taken
was appropriate.@) (emphasis added) (citing Terry v. Ohio, 392
U.S. 1, 21‑22, 88 S. Ct. 1868, 1880 (1968)).





[8]See Brother,
166 S.W.3d at 257.





[9]See id.