COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-273-CR

GREGORY SCOTT NIETO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

A jury convicted Appellant Gregory Scott Nieto of driving while intoxicated (DWI), and the trial court sentenced him to 160 days’ incarceration in Denton County Jail, probated for twenty-four months, and a $600 fine.  In one point, Appellant challenges the trial court’s denial of his motion to suppress the fruits of his detention and arrest.  Because we hold that the trial court did not err by denying Appellant’s motion to suppress, we affirm the trial court’s judgment.

At approximately 7:30 a.m. on September 18, 2005, Lewisville police officer David Moulton was dispatched via his in-car computer in response to a call originally made to the Denton County Sheriff’s Department and transferred to the Lewisville Police Department.  The computer gave Moulton information as to the nature of the call, the location of the call, the name the caller had given, and the telephone number the caller had given the police.  The caller stated that she was driving southbound on the interstate (I-35) and had observed a vehicle “all over the roadway” and “going from lane to lane.”  She described the car, which she was following, as a dark-colored Mustang with a spoiler and described her own vehicle as a light-colored SUV.  She was asked to turn on her hazard lights so that the officer could identify her.

Moulton testified that a few moments after receiving the dispatch, he observed a dark Mustang traveling south on the interstate, followed by a silver Hyundai Sante Fe with its hazard lights on.  Moulton followed the Mustang through a construction zone for approximately an eighth of a mile before stopping it.  Moulton did not observe the Mustang commit any traffic violations before pulling it over.  After Moulton and the Mustang stopped, the driver of the SUV passed the location, pointing at the Mustang and nodding her head, but she did not stop behind Moulton as dispatch had requested.  Moulton ultimately arrested the driver of the Mustang, Appellant, for DWI.  Moulton testified that after the arrest, he used the telephone number provided to contact the caller, and she told him that she lived in East Texas and that she was not able to stop at the scene but had to continue on.

In support of Appellant’s motion to suppress, Brian Galindo, a private investigator, testified that he had obtained the name given by the caller, Nadia Starber, from the police report.  He did a nationwide search and was unable to locate anyone named Nadia Starber.  He found that the telephone number given was registered to a “Gregory Lively,” although the voicemail at the telephone number indicated that the telephone belonged to a “Tammy.”  He located a “Tammy Lively” in the same area, but she denied having that telephone number.

As the State points out, because the facts related to the trial court’s ruling are undisputed, we conduct a de novo review of the trial court’s application of the law to the facts.
(footnote: 2)  Because there was no request for the trial court to enter findings of fact, we review the evidence in the light most favorable to the trial court’s ruling and must sustain the trial court’s decision if correct under any applicable theory of law.
(footnote: 3)
 As the Texas Court of Criminal Appeals has explained,

Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity.  These facts must amount to more than a mere hunch or suspicion.

The factual basis for stopping a vehicle need not arise from the officer's personal observation, but may be supplied by information acquired from another person.  For example, . . . we [have] held that a stop based on facts observed by an undercover officer and transmitted by radio to a deputy sheriff did not violate the Fourth Amendment.

It has been widely recognized that the reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her.
(footnote: 4) 

“[A] stop based on facts supplied by a citizen-eyewitness, which are adequately corroborated by the arresting officer, do[es] not run afoul of the Fourth Amendment.”
(footnote: 5)  As the State argues, corroboration does not mean that the officer must personally observe the possible criminal activity; rather, it refers to whether the police officer, in light of the circumstances, is able to confirm enough facts to reasonably conclude that the information given to him or her is reliable, justifying the temporary detention.
(footnote: 6)  In cases such as this, we look to the information known by the police officer at the time of the detention.
(footnote: 7) To justify the detention, it is sufficient that a credible person provides verifiable information that leads the officer to believe that a crime is in progress.
(footnote: 8)  A citizen informant is deemed credible if she provides information by which she can be identified and remains at the scene for a sufficient time to make sure that the officer has received all the information she can provide and that the police officer has fixed on to the correct vehicle or suspect.
(footnote: 9)
 In the instant case, the citizen informant provided a name, a telephone number, and a description of the suspect vehicle and of her own automobile.  She followed the suspect vehicle, and, at the request of the police, turned on her hazard lights.  She continued to follow the suspect vehicle until the police officer began to pursue it.  She remained behind the police officer until he had succeeded in pulling the suspect vehicle over.  Instead of stopping as instructed, she passed the officer and the suspect vehicle and signaled to the officer that he had pulled over the correct car, but the officer was able to reach her at the telephone number provided.

It is unclear whether she gave a false name or what name she did provide, but challenges to the citizen informant’s credibility were not known to the officer at the time he detained Appellant.  It was only after the investigation and Appellant’s arrest that the credibility of the citizen informant was challenged.  The officer had no reason to believe that she had provided a false name, especially in light of the fact that he was able to contact her after the detention by calling the telephone number that she had provided.

We consequently hold that the trial court did not err by overruling Appellant’s motion to suppress.  We overrule Appellant’s sole point and affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  August 31, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
See Brother v. State
, 85 S.W.3d 377, 380-81 (Tex. App.—Fort Worth 2002), 
aff’d
, 166 S.W.3d 255 (Tex. Crim. App. 2005), 
cert. denied
, 546 U.S. 1150 (2006).

3:
See State v. Cullen
, 195 S.W.3d 696, 698-99 (Tex. Crim. App. 2006);
 Maxwell v. State
, 73 S.W.3d 278, 281 (Tex. Crim. App.), 
cert. denied
, 537 U.S. 1051 (2002).

4:
Brother v. State
, 166 S.W.3d 255, 257-58 (Tex. Crim. App. 2005) (citations omitted).

5:
Id. 
at 259.

6:
See id.
 at 259 & n.5.

7:
Davis v. State
, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (The existence of reasonable suspicion is determined under an objective standard, namely, “would the facts available to the officer 
at the moment of the seizure or search
 warrant a [person] of reasonable caution in the belief that the action taken was appropriate.”) (emphasis added) (citing 
Terry v. Ohio
, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968)).

8:
See Brother
, 166 S.W.3d at 257.

9:
See id.