



## MEMORANDUM OPINION

No. 04-09-00696-CR

Keith Edward **BRESEE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law, Kendall County, Texas
Trial Court No. 09-120-CR
Honorable Bill Palmer, Judge Presiding[1]

Opinion by:    Karen Angelini, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Marialyn Barnard, Justice

Delivered and Filed:  August 4, 2010

AFFIRMED

Keith Edward Bresee argues that the trial court erred in denying his motion to suppress.

We affirm.

### BACKGROUND

Bresee, who was charged by information and complaint with the offense of driving while

intoxicated, filed a pretrial motion to suppress, arguing that he was unlawfully stopped and

---

[1] The Honorable Bill Palmer signed the judgment. The Honorable Robert R. Barton presided over the motion to suppress hearing and made written findings of fact and conclusions of law.

detained in violation of the Fourth Amendment to the Constitution. At the suppression hearing, Trooper Todd Setliff of the Texas Department of Public Safety testified that on April 11, 2009, he was on patrol in Kendall County when he heard Kendall County law-enforcement radio dispatch inform officers about a citizen's report of a person driving while intoxicated. According to dispatch, a citizen had called 911 and reported that an intoxicated person had caused a public disturbance at a bar in Sisterdale, had left the bar driving a blue Saturn vehicle with a license plate number of "HXT 573," and had left the bar traveling south on Farm-to-Market Road 1376. About sixteen minutes after hearing this information, Trooper Setliff saw a blue Saturn vehicle with the license plate number of "HXT 573" traveling on Farm-to-Market Road 473, about eleven miles from Sisterdale. Trooper Setliff then radioed dispatch and asked whether the citizen who had called 911 had identified himself. Dispatch responded that the caller had left his name and address.

Trooper Setliff testified that he then activated his lights and pulled over the blue Saturn. After approaching Bresee, the driver of the Saturn, Trooper Setliff testified that he smelled the odor of alcohol. Trooper Setliff described the odor as being moderate to strong. And, Trooper Setliff testified Bresee's eyes appeared glassy. Trooper Setliff asked Bresee for his driver's license and explained why he had been stopped. According to Trooper Setliff, although Bresee was not slurring his words, he was fumbling through his wallet, unable to locate his driver's license. Trooper Setliff testified that Bresee's fumbling was an indicator of intoxication "[b]ecause normally, most people, when they go through their wallet, they locate their license, especially when it's right in front of them they don't have trouble finding it." Trooper Setliff testified that he finally grabbed the license out of Bresee's wallet himself. Bresee then began trying to explain his side of the story about the incident at the bar in Sisterdale, and Trooper

Setliff asked Bresee to step out of his vehicle. According to Trooper Setliff, Bresee did not deny that he had been at the bar in Sisterdale. Trooper Setliff then asked Bresee whether he could look into Bresee's eyes, explaining that he wanted to make sure Bresee could drive before allowing Bresee to leave in his car. Bresee responded that he would not take any tests, but would provide a blood sample. When Trooper Setliff asked Bresee if he would take a portable breath test, Bresee refused. Trooper Setliff testified that he then arrested Bresee for driving while intoxicated. After the hearing, the trial court denied Bresee's motion to suppress. And, upon Bresee's request, the trial court made written findings of fact and conclusions of law.

## DISCUSSION

In his first issue, Bresee argues that Trooper Setliff did not have reasonable suspicion to stop his vehicle. Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). These facts must amount to more than a mere hunch or suspicion. *Brother*, 166 S.W.3d at 257.

When reviewing a trial court's ruling on a motion to suppress, we give almost total deference to the court's determination of the historical facts that the record supports, especially when those fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see also State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). We accord the same level of deference to the trial court's rulings on mixed questions of law and fact if those decisions turn on the credibility and

demeanor of the witnesses. *Guzman*, 955 S.W.2d at 89. We review de novo mixed questions of law and fact that do not turn on witness credibility. *Id.*

Here, the trial court made written findings of fact and conclusions of law. The trial court made the following findings of fact:

> On April 11, 2009, State Trooper Todd Setliff, while on patrol in Kendall County, overheard a Kendall County law-enforcement radio dispatch that a person who identified himself by name and address had called the dispatcher, and advised that an individual was intoxicated and had created a disturbance at a bar in the town of Sisterdale, and had driven away in a blue Saturn, license number HXT 573, traveling toward the city of Boerne. About sixteen minutes after hearing the radio dispatch, Trooper Setliff came upon the described vehicle traveling on a public roadway approximately eleven miles from Sisterdale. When Trooper Setliff activated his overhead lights, the suspect vehicle pulled to the shoulder of the road and stopped. The defendant was the driver of the Saturn automobile. He had an odor of an alcoholic beverage about his person, was unable to locate his driver's license without the trooper's assistance, and his eyes were glassy. The defendant refused to submit to a breath test and field sobriety tests, but stated that he would give a blood specimen. Trooper Setliff gave the defendant the DIC-24 warning and placed [Bresee] under arrest for the offense of driving while intoxicated. Any statements made by the defendant after his arrest were volunteered and not made in response to custodial interrogation. The defendant never requested counsel.

The trial court then concluded that the information related to the dispatcher by the caller who identified himself and provided contact information was sufficient to give Trooper Setliff reasonable suspicion to stop Bresee and investigate whether Bresee was intoxicated. The trial court also concluded that Trooper Setliff had probable cause to believe that Bresee was committing the offense of driving while intoxicated and the offense of public intoxication within Trooper Setliff's presence or view. Thus, the trial court concluded Trooper Setliff's arrest of Bresee without a warrant was lawful.

On appeal, Bresee argues that Trooper Setliff did not have reasonable suspicion to stop his vehicle because Trooper Setliff did not personally see him commit a traffic violation. However, the factual basis for stopping a vehicle need not arise from the officer's personal observation but may be supplied by information acquired from another person. *Adams v. Williams*, 407 U.S. 143, 147 (1972); *Brother*, 166 S.W.3d at 257. A stop based on facts supplied by a citizen-eyewitness, when adequately corroborated by the officer, does not run afoul of the Fourth Amendment. *Brother*, 166 S.W.3d at 259. "'Corroboration' does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is, has been, or is about to be committed." *Id.* at n.5. Rather, it "refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* "[T]he reliability of a citizen-informant is generally shown by the very nature of the circumstances under which the incriminating information became known to him or her." *Id.* at 258. Thus, a citizen's tip deserves great weight when there is a detailed description of the wrongdoing along with a statement that the event was witnessed firsthand, when a citizen puts himself in a position to be held accountable for his intervention, or when the citizen is not connected with the police or a paid informant. *Turley v. State*, 242 S.W.3d 178, 181 (Tex. App.—Fort Worth 2007, no pet.). That is, where the reliability of information is increased, less corroboration is necessary. *Id.*

Here, Trooper Setliff heard through his radio that a citizen had called 911 to report that an individual was intoxicated and causing a disturbance at a bar in Sisterdale. The dispatcher said that the citizen saw the intoxicated individual leave the bar driving a blue Saturn with the license plate number "HXT 573," traveling southbound on Farm to Market Road 1376. Trooper Setliff then came upon a blue Saturn vehicle with the license plate "HXT 573," traveling on Farm to

Market Road 473, about eleven miles from the bar in Sisterdale. Trooper Setliff called dispatch and asked whether the citizen had left his name and address; Trooper Setliff was told that the caller had indeed left his name and address. Thus, although Trooper Setliff did not personally observe any signs of intoxication before stopping Bresee's vehicle, the unsolicited information provided by the 911 caller was sufficiently corroborated by Trooper Setliff: the vehicle's description, license plate number, and proximity of the vehicle was consistent with the 911 caller's report. Further, Trooper Setliff inquired into the reliability of the 911 caller and confirmed that the 911 caller, by giving his name and address, had put himself in a position to be held accountable for his intervention. Under the facts of this case, the trial court did not err in determining that Trooper Setliff had reasonable suspicion to stop Bresee's vehicle. *See Brother*, 166 S.W.3d at 259-60; *Martinez v. State*, 261 S.W.3d 773, 776-78 (Tex. App.—Amarillo 2008, pet. ref'd); *Turley*, 242 S.W.3d at 181-82; *State v. Nelson*, 228 S.W.3d 899, 904-05 (Tex. App.—Austin 2007, no pet.).

In his second issue, Bresee argues that his continued detention was unreasonable because Trooper Setliff could not remember whether he smelled the odor of alcohol while Bresee was inside his vehicle or outside his vehicle. Thus, Bresee argues that "it was unreasonable to force appellant from his vehicle to perform a standardized field sobriety test." An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (Ginsberg, J., concurring).

Here, Trooper Setliff stopped Bresee's vehicle based on his reasonable suspicion that Bresee was driving while intoxicated. Trooper Setliff approached Bresee's vehicle, asked Bresee for his driver's license, and explained why Bresee had been stopped. Trooper Setliff testified that he then smelled the moderate to strong odor of alcohol and noticed that Bresee was fumbling with his wallet, unable to retrieve his driver's license that was right in front of him. Trooper Setliff also noticed that Bresee's eyes appeared to be glassy. When asked whether he smelled alcohol before or after Bresee stepped out of the vehicle, Trooper Setliff responded that he could not "state exactly when, but it was during the initial conversation" with Bresee. We hold that Trooper Setliff did not unreasonably detain Bresee for purposes of conducting his investigation.

In his third issue, Bresee argues that Trooper Setliff did not have probable cause to arrest him for driving while intoxicated. "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)); *see also* TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2005) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). When analyzing whether facts are sufficient to equal probable cause, we use a "common-sense" approach and view the facts "as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

Here, Trooper Setliff testified that he pulled over the blue Saturn, which was being driven by Bresee. According to Trooper Setliff, he smelled the moderate to strong odor of alcohol. Trooper Setliff testified that Bresee fumbled through his wallet and was unable to locate his

driver's license and that Bresee's eyes appeared glassy. We hold that the trial court did not err in determining that Trooper Setliff had probable cause to arrest Bresee for driving while intoxicated.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice

Do not publish