# NO. 12-10-00168-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT CRAIG SATERBO,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #1* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

This is a DWI case. Appellant, Robert Craig Saterbo, filed a motion to suppress. After the trial court denied the motion, Appellant entered a plea of no contest to the charge subject to the motion to suppress. The trial court accepted Appellant's plea, found Appellant guilty, and assessed his punishment at one year of confinement, probated for two years. In two issues, Appellant contends that the trial court erred in denying his motion to suppress because (1) the arresting officer did not have reasonable suspicion for the initial stop of Appellant, and (2) the arresting officer did not have probable cause to believe Appellant operated a motor vehicle in a public place while intoxicated. We affirm.

## BACKGROUND

Nathan Shapwell was the assistant manager of a Taco Bell restaurant in Longview. He was working the night shift at about 1:30 a.m. when he observed a customer tarrying in the "drive-thru" lane. The customer appeared to be intoxicated and almost hit a light pole when he left the Taco Bell.

Shapwell called 911, gave his name, and stated that he was calling from where he worked, Taco Bell. He told the dispatcher that a man had spent six minutes in the drive-thru lane

apparently trying to get a straw into his cup. He said to the dispatcher that, judging from his appearance, the man was under the influence of alcohol or drugs. Shapwell informed the dispatcher that the man had almost hit a light pole leaving the drive-thru lane, and that the man had parked his pickup within Shapwell's view in an adjacent parking lot. Shapwell provided the dispatcher with the make, model, and color of the man's pickup. Shapwell continued to watch the pickup parked in the adjacent parking lot until the police arrived. He observed no one get in or out of the pickup.

The Longview dispatcher relayed the make, model, and color of the pickup, together with where it was parked, to Officer Adam Vanover. The dispatcher told Officer Vanover that a Taco Bell employee had reported a man he believed to be intoxicated had just barely avoided hitting a light pole leaving the Taco Bell drive-thru.

Officer Vanover arrived at the parking lot at 1:54 a.m. He had no difficulty identifying the pickup truck the dispatcher had described. Officer Vanover drove his patrol car behind the pickup and activated the overhead lights on his patrol car. He noted that the pickup's motor was still running. Appellant, the only occupant of the vehicle, sat in the driver's seat trying to eat a taco and spilling it on his clothes. Appellant had glassy, red, bloodshot eyes. Officer Vanover asked Appellant to step out of the vehicle. Shapwell, still watching from the Taco Bell, saw Appellant stumble as he emerged from his pickup.

Suspecting Appellant to be intoxicated, Officer Vanover gave Appellant three standardized field sobriety tests, the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test. Based on his poor performance of these tests, Officer Vanover concluded Appellant was intoxicated and placed him under arrest.

In response to Officer Vanover's questions, Appellant admitted he had been driving and that he had had eight or nine beers.

## REASONABLE SUSPICION FOR INITIAL STOP

In his first issue, Appellant contends that the information Officer Vanover was given by the dispatcher did not justify a reasonable suspicion that a crime had been committed, was being committed, or was going to be committed. Appellant stresses that the dispatcher did not provide Vanover the name of the employee who made the call or any information regarding his background or credibility. Before stopping Appellant, Officer Vanover did not talk to Taco Bell

2

employees in order to confirm that Appellant was the subject of their call. Before making contact with Appellant, Officer Vanover did not observe him engaged in illegal activity nor did he note anything wrong with Appellant's pickup. Therefore, Appellant argues, Officer Vanover acted on an unconfirmed anonymous tip, an insufficient basis to initiate an investigatory stop.

## Standard of Review

In reviewing a trial court's ruling on a pretrial motion to suppress, an appellate court must give almost total deference to the trial court's resolution of questions of historical fact that the record supports, especially when based on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). This same standard also applies to mixed questions of law and fact if the resolution of those questions turns on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Guzman*, 955 S.W.2d at 89. Appellate courts review de novo "mixed questions of law and fact" that do not depend upon credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Guzman*, 955 S.W.2d at 89.

## Applicable Law

The United States Constitution and the Texas Constitution secure to the individual freedom from all unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. Stopping an automobile and detaining its occupants is considered a "seizure." *Garza v. State*, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968). An investigatory stop is justified if, based upon the totality of the circumstances, the detaining officer has an objective basis for suspecting that the person stopped is, or is about to be, engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 695, 66 L. Ed. 2d 621 (1981); *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). The facts that justify a stop based on reasonable suspicion need not be personally observed by the officer but may come from one not associated with law enforcement. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). "[I]nformation provided to the police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable." *Derichsweiler v. State*, No. PD-0716-10, 2011 WL 255299, at *4 (Tex. Crim. App. Jan. 26, 2011) (not yet released for publication). It is the cumulative information known to the

cooperating officers at the time of the stop that is to be considered in determining whether reasonable suspicion exists. *Id.*; *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987). "A 911 police dispatcher is ordinarily regarded as a 'cooperating officer' for the purpose of making this determination." *Derichsweiler*, 2011 WL 255299, at *4.

**Discussion**

In his 911 call, Shapwell reported to the dispatcher facts and circumstances he had personally observed supporting his belief that Appellant was dangerously under the influence of alcohol or drugs. He gave his name and place of employment and remained at that location with Appellant's pickup in view parked in the adjacent parking lot. Shapwell identified himself sufficiently to be held accountable for the veracity of his report. Therefore, he may be regarded as a reliable informant. *See Derichsweiler*, 2011 WL 255299, at *5. The information provided by Shapwell objectively supported the police dispatcher's reasonable suspicion that Appellant was driving under the influence of drugs or alcohol. The dispatcher relayed the vehicle's description and location to Officer Vanover together with Shapwell's belief that Appellant was intoxicated. There is evidence that the dispatcher told Officer Vanover that Appellant had almost hit a light pole leaving the Taco Bell drive-thru. However, even if the dispatcher did not relay to Officer Vanover the circumstances giving rise to suspicion that Appellant was intoxicated, Officer Vanover was justified in briefly detaining Appellant for investigation. "The detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain." *Id*., at *4. "It matters not that the dispatcher did not pass all of these details along to the responding officer[ ]. In assessing reasonable suspicion, *vel non*, a reviewing court looks to the totality of objective information known *collectively* to the cooperating police officers, including the 911 dispatcher." *Id*., at *5.

We conclude that the totality of reliable information known collectively to the dispatcher and Officer Vanover provided specific articulable facts leading to the reasonable suspicion that Appellant was intoxicated. Once he had identified Appellant's pickup as the same vehicle reported by Shapwell, Officer Vanover was justified in initiating the investigatory detention of Appellant. Appellant's first issue is overruled.

**PROBABLE CAUSE TO ARREST**

In his second issue, Appellant argues that although Officer Vanover observed Appellant's

4

pickup parked in a parking lot with its motor running, he never saw the pickup move. Appellant was sitting in his pickup eating. The motor was running so that he could operate his air conditioner. The police call log also shows that "subject [Appellant] was sitting in a blue truck and seemed high on something when he came into the store." Appellant insists that "[t]he information possessed by the officer as to whether Appellant was actually ever operating the vehicle is insufficient to establish probable cause."

**Applicable Law**

"Probable cause" for a warrantless arrest exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). The court of criminal appeals has held that, to show operation of a motor vehicle, "the totality of the circumstances [must] demonstrate that the defendant took action to affect the functioning of his vehicle that would enable the vehicle's use." *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995). This definition does not require that the vehicle actually move. *Id.* There are many decisions upholding DWI arrests or convictions under this totality of the circumstances test even though the person "operating" the motor vehicle was initially found to be asleep or unconscious. *See, e.g., Dornbusch v. State*, 262 S.W.3d 432, 436 (Tex. App.–Fort Worth 2008, no pet.). The act of sitting in a legally parked vehicle while intoxicated does not establish probable cause to believe that the individual has been "driving while intoxicated" absent some other factor, such as a recent collision or bystander reports, indicating that the accused actually drove the vehicle. *Tex. Dep't of Pub. Safety v. Alloca*, 301 S.W.3d 364, 369 (Tex. App.–Austin 2009, pet. denied).

**Discussion**

Appellant does not argue that the officer did not have probable cause to believe that he was intoxicated. But he insists Officer Vanover lacked sufficient information that he had been operating his vehicle in that condition. Therefore, he argues, Officer Vanover lacked probable cause to arrest him.

Appellant points out that he was legally parked in a public parking space; his vehicle

5

showed no sign of having been involved in a collision and it was not blocking traffic or otherwise parked in a manner indicating that he had driven to the parking lot while intoxicated. Moreover, he argues, Officer Vanover never before or after Appellant's arrest corroborated Shapwell's report that Appellant had driven to the adjacent parking lot fifteen minutes before after almost colliding with a light pole.

Appellant relies on *Alloca* as support for his argument. In *Alloca*, an officer responding to a "suspicious vehicle" call discovered Alloca asleep in his car in his usual parking space behind the Jiffy Lube where he was manager. The car was in "park" and the front seat was reclined to better accommodate sleeping. The engine was running and the air conditioning was turned on. Alloca did not have his foot on the brake and he had turned on the headlights. His vehicle showed no sign that it had been involved in a collision. It was not blocking traffic or otherwise parked in a manner that would indicate that Alloca had driven there while intoxicated.

The court noted that the officer was responding to a "suspicious vehicle" call, as opposed to a report of a potentially intoxicated driver. *Alloca*, 301 S.W.3d at 369. The call contained no information from which it could have been inferred that Alloca had driven the car while intoxicated. Rather, the court reasoned, it could be inferred from the nature of the call that the vehicle had remained parked long enough to arouse suspicion. The Austin court held that the officer lacked probable cause to believe that Alloca had driven his car to the parking spot while intoxicated. *Id.* at 369-70.

The nature of the report is what distinguishes *Alloca* from the instant case. In this case, a reliable informant reported to the dispatcher that Appellant was apparently intoxicated when he left Taco Bell, almost hitting the light pole on the way out. Fifteen minutes later, Officer Vanover found the vehicle in the parking lot adjacent to Taco Bell as reported. Appellant was in the driver's seat intoxicated, dribbling his taco on his clothes. The motor was running.

Officer Vanover's arrest of Appellant was supported by probable cause. The trial court did not err in denying Appellant's motion to suppress. Appellant's second issue is overruled.

### DISPOSITION

The judgment is *affirmed*.

**BILL BASS**
Justice

6

Opinion delivered April 29, 2011.
*Panel consisted of Worthen, C. J., Griffith, J., and Bass, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(DO NOT PUBLISH)