

# NUMBER 13-25-00445-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JARVIS LAMAR BOOKER,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                     Appellee.

## ON APPEAL FROM THE 25TH DISTRICT COURT
## OF LAVACA COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West
Memorandum Opinion by Chief Justice Tijerina**

Appellant Jarvis Lamar Booker was convicted of the felony offense of possession with intent to deliver a controlled substance in an amount greater than or equal to four grams but less than two hundred grams, and the trial court sentenced him to twenty-five years' imprisonment. *See* TEX. HEALTH & SAFETY CODE § 481.1123(d). By his sole issue, Booker argues that the trial court erred by denying his motion to suppress because there was no reasonable articulable suspicion to perform a traffic stop. We affirm.

# I.    BACKGROUND

On May 28, 2025, the trial court heard Booker's motion to suppress. Patrol Officer Justin Simpkins testified that he was working patrol on August 27, 2024, with the Lavaca County Sheriff's Office. Officer Simpkins stated that he was parked "parallel, observing [passing] traffic." When Booker passed in front of his patrol unit, Booker began "rubbing his face, blocking his face from [Simpkins's] view." Officer Simpkins stated this "gesture," led him to believe that his "presence inflicted an amount of stress on [Booker] that is a gross deviation from that of the general motoring public." Thus, Officer Simpkins was prompted to investigate further, and he began to follow Booker's vehicle.

Officer Simpkins testified that he was immediately behind Booker's vehicle traveling northbound. Through Booker's rearview window, Officer Simpkins observed what he believed to be an "air freshener hanging from the rearview mirror, swinging back and forth." Prior to making this traffic stop, Officer Simpkins understood the Texas Transportation Code to prohibit anything "affixed to a windshield, not including the rearview [mirror], but attached to the rearview [mirror], that may possibly impair the driver's view." Additionally, Officer Simpkin testified that he had been taught that a small 3x5 inch obstruction creates a larger visual impairment at 100 feet, and "can obstruct the driver's view to pedestrians or vehicles." As he followed Booker, Officer Simpkins observed Booker "to be traveling below, well below, the posted speed limit, something that is, again, a gross deviation of that of the general motoring public."

Officer Simpkins decided to conduct a traffic stop based on Booker's violation of the Texas Transportation Code. As he made contact with Booker, Officer Simpkins observed the air freshener hanging from the dash. Booker "only rolled his window down approximately two to three inches," which according to Officer Simpkins "has always been

in an effort to conceal odor with inside the vehicle." Officer Simpkins detected an odor of marijuana emanating from within the vehicle. Officer Simpkins then asked Booker to exit the vehicle and escorted him to his patrol unit to issue the warning and conduct a records check.

Officer Simpkins described Booker as jovial, compliant, and nonconfrontational. When Officer Simpkins questioned whether Booker had marijuana in the vehicle, Booker denied having illegal drugs. Officer Simpkins explained he detected an odor of marijuana in the vehicle, and Booker advised that his stepson may have possibly left marijuana in the vehicle. Officer Simpkins then conducted a search of Booker's vehicle. The search revealed a "block-like shaped cookie," which tested positive for cocaine, "more of th[e] same rock-like substance in the center console, individually packaged," and two bags "of large amounts" of marijuana. Booker had over $5,300 in cash on his person.

Officer Simpkins's dashboard camera and body worn camera videos were admitted into evidence, which confirmed the testimony. The trial court denied the motion to suppress. Booker pleaded guilty to the offense, and this appeal followed.

## II.     MOTION TO SUPPRESS

By his sole issue, Booker argues the trial court erred in denying the motion to suppress because Officer Booker lacked reasonable suspicion to conduct a traffic stop.

### A.     Standard of Review

We review a trial court's denial of a motion to suppress for an abuse of discretion under a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016) (citing *Valtierra v. State*, 310 S.W.3d 442, 447–48 (Tex. Crim. App. 2010)); *see Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We view the evidence in light most favorable to the trial court's ruling, and we assume the trial court made findings

3

consistent with its ruling and that are supported by the record. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). "We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We will only reverse a trial court's ruling if it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

## B.    Reasonable Suspicion

A warrantless traffic stop must be justified by reasonable suspicion. *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022). "[R]easonable suspicion exists where the officer has 'specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity.'" *Brodnex*, 485 S.W.3d at 437 (quoting *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)). "When making a determination of reasonable suspicion, we consider the totality of the circumstances." *Hardin*, 664 S.W.3d at 872. This means we "must look at all of the facts together to make the reasonable suspicion determination; facts that do not show reasonable suspicion in isolation may do so when combined with other facts." *Loesch v. State*, 958 S.W.2d 830, 832 (Tex. Crim. App. 1997). There is no requirement that the facts giving rise to a detaining officer's reasonable suspicion "must show that the detainee has committed, is committing, or is about to commit, a particular and distinctively identifiable penal offense." *Derichsweiler v. State*, 348 S.W.3d 906, 916 (Tex. Crim. App. 2011). Instead, the "articulable facts must show that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some

4

indication that the unusual activity is related to crime." *Id.* (citation modified). "[T]he detaining officer need not be personally aware of every fact that objectively supports a reasonable suspicion to detain; rather, 'the cumulative information known to the cooperating officers at the time of the stop is to be considered in determining whether reasonable suspicion exists.'" *Id.* at 914 (internal footnote omitted). But "the officer must have more than an inarticulable hunch or mere good-faith suspicion that a crime was in progress." *Brodnex*, 485 S.W.3d at 437.

Under Texas Transportation Code section 547.613(a), it is a misdemeanor for a "person operat[ing] a motor vehicle [to have] an object or material that is placed on or attached to the windshield . . . that obstructs or reduces the operator's clear view." TEX. TRANSP. CODE § 547.613(a)(1).

## C. Discussion

Appellant argues that there "is no Texas law that clearly proscribes hanging air freshener from the rearview mirror" and that rearview mirrors are specifically excepted from the Texas Transportation Code. *See id.* § 547.613(b). Appellant further argues that there "is no evidence in the record that the paper air freshener obstructed the driver's clear view, and thus, there was no reasonable suspicion" that Booker was committing a crime. Despite Officer Simpkins's testimony describing the visual impairment caused by the hanging air freshener and similar sized obstructions, Booker seems to suggest that because there was no evidence his view was actually obstructed, there can be no reasonable suspicion. However, regarding reasonable suspicion, "[t]he State does not have to establish with absolute certainty that a crime occurred." *Abney v. State*, 394 S.W.3d 542, 548 (Tex. Crim. App. 2013); *see also Aguilar v. State*, No. 03-11-00133-CR, 2012 WL 677505, at *4 (Tex. App.—Austin Mar. 2, 2012, no pet.) (mem. op., not

5

designated for publication) ("There is no requirement that a traffic regulation must be violated in order for an officer to have sufficient reasonable suspicion to justify a traffic stop."). "[T]hat an officer must personally witness facts giving rise to criminal activity, is against the great weight of authority." *Brother v. State*, 166 S.W.3d 255, 258–59 (Tex. Crim. App. 2005).

In this case, the State was required to show that Officer Simpkins had reasonable suspicion to stop Booker based on the suspected violation of section 547.613: that an object or material was placed on or attached to the windshield that obstructed or reduced his clear view. As stated in *Rittingger*:

> In determining whether Trooper Francis had reasonable suspicion to stop Merida based on a suspected violation of . . . § 547.613(a), the court assesses whether Trooper Francis had a basis for his belief that justified the stop; the question whether Merida's view was actually obstructed or reduced by the GPS holder does not control whether Trooper Francis had a reasonable suspicion that the GPS holder was positioned in a way that violated § 547.613(a).

*United States v. Morales Rittingger*, No. 2:16-CR-053-D(2), 2017 WL 367491, at *6 (N.D. Tex. Jan. 25, 2017). Thus, we only assess whether Officer Simpkins had a basis for his belief that justified the stop: whether he had a reasonable suspicion that an object was positioned in a way that violated section 547.613(a). *See id.* Officer Simpkins testified that he observed Booker attempt to obscure his face when he passed Officer Simpkins; he observed "an obstruction" "hanging from Booker's rearview mirror, swinging back and forth," which could have presented "a hazard to other motorists" or Booker himself; at the time Officer Simpkins did not know it was an air freshener only that "it was something affixed"; and that Booker was driving "well below" the speed limit, which was a "gross deviation" from the general public. This evidence, including the video from his dashboard camera, measured from an objective standard, supports the conclusion that there existed

6

at least a reasonable suspicion that Booker was driving with an object attached to the windshield that obstructed his view, justifying the stop. *See* TEX. TRANSP. CODE § 547.613(a)(1). Requiring evidence with certainty that a violation occurred, as Booker suggests, would raise the standard for reasonable suspicion far above probable cause. *See id.*; *Abney*, 394 S.W.3d at 548; *see also Azzam v. State*, No. 13-22-00370-CR, 2023 WL 5624094, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2023, pet. ref'd) (mem. op., not designated for publication) (noting that an officer only needs reasonable suspicion for a traffic stop, which "requires only some minimal level of justification for the stop"). Accordingly, we cannot conclude that the trial court abused its discretion in denying the motion to suppress. We overrule Booker's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Concurring Memorandum Opinion
by Justice Jon West.

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
4th day of June, 2026.

7