**AFFIRM; and Opinion Filed January 29, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00639-CR

### JOHN DEE PLASTER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 203rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F-10-34490-P**

## MEMORANDUM OPINION

Before Justices FitzGerald, Lang, and Fillmore
Opinion by Justice Fillmore

The State charged John Dee Plaster with possession, with intent to deliver, of four grams or more but less than 200 grams of methamphetamine, enhanced by one prior conviction. After an evidentiary hearing, the trial court denied Plaster's pre-trial motion to suppress. Plaster then pleaded guilty to the charge and true to the alleged enhancement, and the trial court assessed punishment of fifteen years' imprisonment. In one issue, Plaster contends the trial court erred by denying his motion to suppress. We affirm the trial court's judgment. We issue this memorandum opinion because the law to be applied in this case is well-settled. *See* TEX. R. APP. P. 47.1, 47.4

## Background

At the hearing on Plaster's motion to suppress, Mark Laseter, a repossession agent, testified that, on June 4, 2010, he was driving his wrecker on Loop 12 when he saw the car in front of him swerving from lane to lane. Laseter passed the car "just to get away from him." The driver of the car, later identified as Plaster, increased his speed and almost "hit" Laseter's truck. Laseter called 911 and reported a possibly intoxicated driver was swerving from lane to lane and had almost "hit" his truck. Laseter told the 911 dispatcher the color of Plaster's car and its license plate number. He also provided the dispatcher with his name and telephone number.

The dispatcher instructed Laseter to stay behind the car until officers arrived. Laseter followed the car for seven or eight minutes. According to Laseter, the car was swerving the entire time he was following it and failed to maintain a consistent speed. Both Plaster and Laseter exited from Loop 12 at Shady Grove.

When Plaster and Laseter reached a traffic light, Laseter noticed two Irving police cars behind him. There were two left turn lanes at the light, and Plaster and Laseter were both in the inside turn lane. According to Laseter, as Plaster turned left, he turned into the outside turn lane. Laseter turned left into the inside lane. As Laseter turned left, he slowed down and allowed the police officers to pass him. Laseter viewed a video taken from the police car behind him and identified his wrecker in front of the police car. In the video, it can be seen that, as the police car turned left behind Laseter, Plaster's car was visible in the outside lane.

After the police officers stopped Plaster, Laseter pulled over to the side of the road and waited until one of the officers approached him. Laseter gave the officer his driver's license and provided his "information." Laseter was then allowed to leave the scene.

Irving police officer Robert Kuether testified he had been performing patrol for approximately three years. He came into contact with Plaster on June 4, 2010 after a call "came

out as a DWI being followed by a citizen." Kuether was told the driver was "all over the roadway." To Kuether, that meant the car was not staying within one lane and was weaving. Kuether and another officer had previously responded, in separate cars, to a call on the east service road of Loop 12. Because they were "right there on the same street almost," they quickly located Laseter and Plaster. The other police officer was behind Laseter at a traffic light, and Kuether was behind the other officer.

Kuether testified that, because Laseter had provided the license plate number for Plaster's car to dispatch, he had learned the registration for Plaster's car had expired. After Plaster made an improper left turn at the traffic light by turning into the far turn lane from the inside turn lane, Kuether conducted a traffic stop. He explained to Plaster that a citizen had reported him as possibly driving while intoxicated. Plaster denied having had anything to drink. Kuether requested permission to search Plaster. Plaster consented to the search, and Kuether found a baggie of what he believed was methamphetamine in Plaster's pocket. After he arrested Plaster, Kuether found additional methamphetamine in Plaster's car.[1]

According to Kuether, the reasons for the traffic stop were a possible driving while intoxicated offense, an expired license plate, and an improper left turn. Kuether testified he saw the improper left turn. Prior to seeing the improper turn, his only bases for stopping Plaster were the expired license plate and Laseter reporting that Plaster was possibly driving while intoxicated.

Kuether was cross-examined about his testimony at the examining trial. He recalled testifying that another officer saw the improper left turn. He does not recall testifying that "it was at that point that [he] sent the license plate to [his] computer screen." After reviewing his testimony from the examining trial, he conceded that, following his testimony that the other

---

[1] Plaster has not challenged the search of either his person or of his car.

officer saw the improper left turn, he stated "and then I had the license plate sent to my computer screen." Kuether admitted he asked the other officer after the stop why the other officer stopped Plaster. He asked the other officer the question because, even though he knew why he stopped Plaster, it is good to ask what someone else saw. On re-direct, Kuether testified that, although Laseter had already provided dispatch with Plaster's license plate number, Kuether "called the license plate in" after he stopped Plaster because that was the proper procedure. Kuether reiterated that he saw the improper left turn.

The trial court made oral findings that "an officer may rely on reasonable trustworthy information provided by another person in making the overall possible assessment" and "it would be a sad day in a county as large as Dallas if a trustworthy person as Mark Laseter could not call in and the police be able to stop." The trial court also found there was a possibility Kuether could have seen Plaster turn into the wrong lane. The trial court denied Plaster's motion to suppress.

## Analysis

In his sole issue, Plaster asserts the trial court erred by denying the motion to suppress because the State did not prove Kuether had reasonable suspicion to stop him. Plaster specifically argues Kuether could not have personally seen a traffic violation and was not credible on the issues of whether he saw Plaster make an improper left turn or knew Plaster had an expired registration.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an

evaluation of credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We review mixed questions of law and fact that do not turn on credibility and demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

A trial court's findings of fact and conclusions of law are sufficient if they are recorded in some manner, whether written and filed by the trial court, or stated on the record at the hearing. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes specific findings of fact, we determine whether the evidence supports those findings. *Id.* As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the cause. *Turrubiate*, 399 S.W.3d at 150.

When a police officer stops a defendant without a warrant, the State has the burden of proving the reasonableness of the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A police officer is permitted to stop and temporarily detain a person in order to conduct an investigation if the officer, based on his experience, has a reasonable suspicion that an individual is violating the law. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *Ford*, 158 S.W.3d at 492 (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002)). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences

–5–

from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Castro v. State*, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). The officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (quoting *Terry*, 392 U.S. at 21). Reasonable suspicion is determined by considering whether the officer had "some minimal level of objective justification for making the stop." *Id.* Because reasonable suspicion is an objective standard, we disregard any subjective intent of the officer and we consider the totality of the circumstances. *Ford*, 158 S.W.3d at 492–93.

The officer need not personally observe the factual basis giving rise to reasonable suspicion for a traffic stop; rather, under certain circumstances, a stop may be justified if the facts underlying the traffic stop are observed by a civilian-informant and adequately corroborated by the arresting officer. *Brother*, 166 S.W.3d at 257, 259 & n.5 (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). An inverse relationship exists between the reliability of the informant and the amount of corroborated information required to justify the police intrusion; the less reliable the tip, the more information is needed. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). "[I]nformation provided to police from a citizen-informant who identifies himself and may be held to account for the accuracy and veracity of his report may be regarded as reliable." *Derichsweiler v. State*, 348 S.W.3d 906, 914–15 (Tex. Crim. App. 2011); *see also Martinez*, 348 S.W.3d at 923 ("[W]hen the informant provides self-identifying information that makes himself accountable for the intervention, the degree of reliability significantly improves."). When the information is provided by an identified citizen-informant, "the only question is whether the information that the known citizen-informant provides, viewed through

the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot." *Derichsweiler*, 348 S.W.3d at 915 (internal citations omitted).

In the present case, Laseter, a citizen eyewitness, gave his name and contact information to the 911 dispatcher and testified at the suppression hearing. Laseter told the dispatcher that Plaster was weaving between lanes, failing to maintain a constant speed, and had almost hit Laseter's car and that Laseter thought Plaster was possibly intoxicated. Laseter also provided the dispatcher with the color and license plate number of Plaster's vehicle. The dispatcher relayed the information provided by Laseter to the responding police officers and instructed Laseter to remain behind Plaster until the officers arrived. Kuether and the other responding officer were able to corroborate Laseter's information by locating a vehicle at the disclosed location that matched the vehicle description and license plate provided by Laseter. Laseter remained at the scene of the stop until a police officer had obtained his "information," inspected his driver's license, and released him to leave. Laseter testified at the suppression hearing about his observations, and the veracity and accuracy of Laseter's report is not at issue. *See Derichsweiler*, 348 S.W.3d at 915; *Brother*, 166 S.W.3d at 258.

We next turn to whether the information supplied by Laseter provided Kuether specific, articulable facts that, when viewed through the prism of Kuether's level of knowledge and experience, objectively supports a reasonable suspicion that Plaster was engaged in criminal activity. *See Derichsweiler*, 348 S.W.3d at 915–16. Laseter reported that Plaster was swerving between lanes, failing to maintain a consistent speed, and had almost collided with Laseter and that Laseter thought Plaster was intoxicated. These facts are sufficient to support a reasonable suspicion by Kuether that Plaster was driving while intoxicated. *See Brother*, 166 S.W.3d at 258–59 (information from citizen informant that defendant was speeding, tailgating, and

weaving across several lanes of traffic provided officer reasonable suspicion to make traffic stop; "[t]o require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny"). Therefore, the trial court did not err by denying Plaster's motion to suppress on the basis that the information provided by Laseter gave Kuether reasonable suspicion to stop Plaster and temporarily detain him for investigatory purposes. Because we conclude the trial court did not err by determining Kuether had reasonable suspicion to stop Plaster based on the information provided by Laseter, we need not consider whether the stop was also permissible because Plaster made an improper left turn. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130639F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN DEE PLASTER, Appellant

No. 05-13-00639-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 203rd Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F-10-34490-P.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 29th day of January, 2014.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE